## Hays *vs.* Richardson.—December, 1829.

No person who is called as a witness, not being a party to the suit, can refuse to give testimony on the ground, that he may thereby become liable to a civil action not of a penal nature, or sustain pecuniary loss, or that the verdict may be used as evidence against him in some other civil proceeding then pending, or which may thereafter be instituted.

A witness on the *voir dire*, may by the party objecting to his examination in chief, for the purpose of shewing his interest, be called on to state the contents of written instruments, which are not produced; and the reason assigned is, that the party objecting, could not know previously, that the witness would be called, and consequently, might not be prepared with the best evidence to establish his objection.

An instrument of the following tenor—"I hereby authorize R to open, and continue open, a road through my field, beginning at, &c. as also to build, keep in repair, and use a bridge over the branch, in the field on which the said road will pass, said road and bridge being intended as well for the public use, as the use of R; and to continue until R and myself shall agree it shall be shut up or altered;" executed under the hand and seal of the owner of the land, is a grant of an incorporeal hereditament, a right of way *de novo*, which will endure until both parties agree upon its discontinuance, and which must be acknowledged, and recorded according to our acts of registration.

A right of way in *esse* may pass by deed of bargain and sale, duly acknowledged and recorded.

A transfer of way *de novo* may be by grant or lease, but cannot be effected by way of bargain and sale.

A right of way may be said to lie in the county where it exists, or is exercisable.

The acts of Assembly of 1715, ch. 47, and 1766, ch. 14, being in *pari materia*, must be construed together as one system. The first having embraced incorporeal tenements, and hereditaments, there is no reason why they should be excluded from the second. The act of 1766, cannot be confined to conveyances only by which the land itself passes, for the design was, that all rights, incumbrances, or conveyances, touching, connected with, or in any wise concerning land, should appear upon the public records.

If contradictions or incongruities exist between the preamble, and enacting clause of a statute, the latter shall prevail.

A cotemporaneous, unvarying construction of an act of Assembly, for sixty years, ought not to be disregarded but upon the most imperious and conclusive grounds.

APPEAL from *Harford* County Court. This was an action on the case for obstructing a way, whereto the plaintiff below (now appellee) claimed right by virtue of an instrument of

writing under the hand and seal of one *Joshua S. Bond.* The declaration stated that on the 7th of October, 1820, at, &c. a certain *Joshua S. Bond*, being seized in his demesne as of fee of a certain close there situated, by his grant under his hand and seal, bearing date the day and year aforesaid, (which is now here shewn to the court) authorised the plaintiff to open and continue open a road through his the said *Joshua S. Bond's* field, to wit: The said close beginning at the end of the short lane near the house of the plaintiff, and intersecting the *Baltimore* road, near a chesnut tree; and the said *Joshua* thereby also authorised the plaintiff to keep in repair, and use a bridge, over the branch running through the said field. And the plaintiff also says that by the grant aforesaid, it was declared that the said road and bridge were intended as well for the use of the public at large, as for the use of the plaintiff, and that the said uses were to be enjoyed until the plaintiff and the said *Joshua S. Bond* should agree that the said road, intended to be opened as aforesaid, should be shut up or altered. And the plaintiff avers that afterwards, &c. he opened a road through the said close of the said *Joshua*, beginning at the end of the said short lane near his the plaintiff's house, and terminating, at, or near a chesnut tree, thus intersecting the road leading towards *Baltimore*, and continued to pass and repass over the said road with his servants and horses, &c. for a long space of time to wit, at, &c. And he further avers that after the said road was opened, the citizens of this state passed and repassed over the said road. And the plaintiff further avers that after the said road had been by him opened as aforesaid, while the said grant was in full force and effect, and had not been determined nor any agreement made between the said *Joshua S. Bond*, and the plaintiff, by which the said road should be shut up or altered; the defendant well knowing the premises and disregarding the rights of the plaintiff, and intending to injure the plaintiff and deprive him of the use and benefit of the said way, to wit, on the 10th of August, 1823, and on divers other days and times, &c. obstructed the same road by placing, &c. and demolished the bridge across the same, &c. by means thereof, the plaintiff could not

during the time aforesaid, have or enjoy his said way, as he of right ought to have done, to wit, at, &c. And the plaintiff further says, that he during the time aforesaid, being a public Inn keeper, was much damaged and injured in his trade and calling by divers citizens, as well travellers as others, during the said time being greatly obstructed and hindered in their passage to and from his said Inn, the said road herein before mentioned, then and there leading from or near his said Inn, to the said other road leading towards the city of *Baltimore,* to wit, at, &c. Wherefore the defendant (the appellant) pleaded not guilty, and issue was joined.

1. At the trial, the plaintiff called *Francis A. Bond* as a witness, who being examined by the defendant on the *voir dire,* stated that in case the plaintiff should recover in this cause, he considered he should be obliged to pay the defendant the amount of the verdict, damages and costs, as one of the heirs of *Buckler Bond,* who had conveyed with the covenants in the deed hereinafter inserted, the land over which the way in the declaration mentioned passes, to the defendant before the time stated of the trespass complained of, and that he was unwilling to testify in this case for the plaintiff. The defendant then prayed the court that the witness should not be compelled to testify for the plaintiff. But the court [*Hanson,* A. J.] directed the witness to be sworn; and he was sworn accordingly in chief. The defendant excepted.

2. The defendant further asked the witness *Francis A. Bond,* while on his *voir dire,* if in addition to the interest mentioned in the *first* bill of exceptions, he was or was not interested as the holder of a promissory note or acceptance, conditioned to be paid only after deducting the damages and costs in this case, that might be recovered from the defendant. But the court held that witness could not answer this question, inasmuch as the note spoken of was not produced. The defendant excepted.

3. The plaintiff then proved that the said *Joshua L. Bond,* mentioned in the declaration in this cause, was seized in fee of the land over which the said road passed; that the said *Bond*

gave to the plaintiff the following instrument of writing which was duly proved. " I hereby authorise *William Richardson* to open and continue open a road through my field, beginning at the end of the short lane near his house, and intersecting the present *Baltimore* road, at or near a chesnut tree, as also to build, keep in repair, and use a bridge over the branch in the field on which said road will pass, said road and bridge being intended as well for the public use, as the use of *Wm. Richardson*, and to continue until *William Richardson* and myself shall agree it shall be shut up or altered. Witness my hand and seal this 7th day of October, 1820. *Joshua S. Bond*, (Seal.)"

And that the plaintiff opened the said road and repaired the bridge in pursuance of the terms of the said instrument of writing, and used the same ; and that the defendant on the 20th of August, 1823, obstructed the road aforesaid as stated in the declaration, and the plaintiff who was a tavern keeper by the obstruction aforesaid was with many others prevented from using the said way. The defendant then offered in evidence a deed duly acknowledged and recorded from said *Joshua S. Bond* and a certain *Buckler Bond*, conveying said land to defendant in fee ; dated the 4th of June, 1823, which contained a covenant against all prior incumbrances and liens. And upon which deed there was a certificate of the delivery of seisin, to the defendant who further proved, that on the day on which the deed aforesaid was executed, that the said *Bond* delivered possession of the land mentioned in said deed to him. The defendant then prayed the court to direct the Jury, that the plaintiff was not entitled to recover, which direction the court refused to give. The defendant excepted ; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN Ch. J. and EARLE, MARTIN and DORSEY, J.

*Mitchell and R. Johnson*, for the appellant, contended : 1. That the agreement of *Bond* with the plantiff was no grant, and could not be pleaded as such.

VOL. I.—47

2. That if it was a license, it was determinable at the will of *Bond.*

3. That if not so, the remedy was against *Bond* only, and not against the defendant, who was a purchaser of the soil without notice of this claim.

4. That if it were a grant, it ought to have been recorded to take effect against the defendant, as a purchaser without notice.

5. That if it is to operate as a grant, or otherwise to confer an interest, it is a public road, for the obstruction of which no private action can lie in favor of the plaintiff.

6. That there is a variance between the contract proved, and that declared upon.

7. As to the first bill of exceptions, the witness was directly *interested in the event of the suit, and the verdict would have* been good evidence against him; and, therefore, as a party interested could not be compelled to testisfy.

8. As to the *second* bill of exceptions, the question to the witness was proper, notwithstanding the non-production of the note.

1st. Because the note was not within the power of the defendant, nor in the possession of the plaintiff. 2d. because the question was on the *voir dire* to the interest of the witness alone.

1. The agreement was no grant to the plaintiff as he has pleaded it. He has declared on it, as a *right of way to himself*; whereas if it is a right of way, it is not to the plaintiff alone, but to the public as well as to the plaintiff. The way when opened, was a public way. *3 Bac. Ab. tit. Grants,* (*G*) 387.

2. But it was not a grant at all; and if so it was determinable at the will of *Bond.* *4 Bac. Ab. tit. Leases for years,* 178. *Bishop of Bath's Case, 3 Coke,* 35. There is no difference between grants and leases; and where a lease depends upon the will of both parties, it is at the will of either party. *2 Blk. Com.* 146. *4 Com. Dig. tit. Estute,* (*H*) 60, 63. Here *Bond* put an end to the right of way by his grant to the defendant. The plaintiff was to build and keep in repair a bridge; suppose he neglected to keep the bridge in repair, could *Bond* have compelled him to do so?

3 and 4. If it was a grant of a right of way, has the plaintiff any remedy against the defendant, without notice? There is no evidence to show, that the defendant had any notice of the grant, if it be one. It was not acknowledged or recorded, but was a voluntary transfer or grant without consideration. *Whitbeck vs. Cook*, 15 *Johns. Rep.* 487. *Kellogg vs. Ingersoll*, 2 *Mass. Rep.* 97.

5. There is no proof which can entitle the plaintiff to recover. The road was to be opened for the use of the public. It was a right of way for the public. There must be a particular right or a particular damage to the plaintiff to enable him to sustain the action. *Butler vs. Kent*, 19 *Johns. Rep.* 226. *Co. Litt.* 56. (*a.*) *Harrison vs. Parker*, 6 *East.* 152. Here no particular damage has been proved to have been sustained by the plaintiff.

6. There is a fatal variance between the contract proved and that declared upon. The license states, that the termination of the right of way was to be at the "intersecting the present *Baltimore* road *at or near a Chesnut tree.*" The declaration states it to be "intersecting the *Baltimore* road, *near a Chesnut tree.*" When a written instrument is pleaded with a profert, it must be recited verbatim. 3 *Stark. Evid.* 1587, 1588. 1 *Chitty's Plead.* 364. *Brook vs. Willet*, 2 *H. Blk.* 234. *Rogers vs. Allen*, 1 *Campb.* 315. (*note a.*) *Coryton vs. Lithebye*, 2 *Saund.* 113. (*note* 1.) *Mellor vs. Spateman*, 1 *Saund.* 346. (*note* 2.) *Esp. Evid.* 274, 275. *Doe vs. Calvert*, 2 *East.* 377. *Alban vs. Brownsall*, *Yelv.* 164. 1 *Hawk. Ch.* 76. 3 *Jacob's L. D.* 280.

7. On this point they referred to *Taney and Kemp*, 4 *Harr. & Johns.* 342. 2 *Stark. Evid.* 744, 747. 3 *Stark. Evid.* 1728, 1648. 1 *Stark. Evid.* 135. (*note.*) *The king vs. Inhabitants of Gisburne*, 15 *East.* 57. A distributee cannot be called as a witness to testify against the administrator of the estate in which the witness is interested, against his own consent.

8. On this point they referred to 1 *Stark. Evid.* 120. *Botham vs. Swingler*, *Peake's N. P. Cas.* 218. *S. C.* 1 *Esp. Rep.* 164. *Corking vs. Jarrard*, 1 *Campb.* 37. *Butcher's Company vs. Jones*, 1 *Esp. Rep.* 162. 2 *Stark. Evid.* 756. *Butler vs. Carver*, 2 *Stark. Rep.* 433. *The king vs. Inhabitants of Gisburne*, 15 *East.* 57.

*Gill* for the appellee, contended that the *first* bill of exceptions, presents the question, whether one can be made to testify against his will and interest in a civil action, not being a party thereto, and interested in fact to defeat the party relying on him. This question is settled by this court in the cases of *Taney vs. Kemp* and *The City Bank vs. Bateman.* The witness must testify.

The second bill of exceptions shews, an attempt, on the *voir dire* to give in evidence the contents of a written instrument, without producing it, or accounting for its absence—admitting this may be done where it would avail the party seeking such evidence; yet, in this case, the bills of exceptions referring to each other, the court must see that any benefit which the defendant could have had, from establishing an interest in the witness, on the *second* bill of exceptions, was within his reach on the *first* exception. The nature of the witness's interest, on both bills of exceptions, being the same, as it could not avail him on the first, he should not have attempted to raise the same question again. No injustice was done the defendant, for the question which he was seeking to raise by the *second* exception, had been previously decided, and in a shape too, to be reviewed by the appellate court. The second exception was wholly unnecessary; and, whatever may be the opinion of the court in relation thereto, it ought not to affect the cause.

The *third* bill of exceptions, covers the whole controversy, and the appellee contends: 1. That the deed from *Bond* to *Richardson* is a grant, or a binding and effectual contract, operating necessarily as a grant, to endure until the parties determine the rights secured by it, either by shutting up or altering the road mentioned in it. 3 *Bac. Ab. tit. Grant,* (F) 386, 387, (I) 393. *Shove vs. Pincke,* 5 *T. R.* 124. *Chatham vs. Williams,* 4 *East.* 475, 476. *Chester vs. Willan.* 2 *Saund.* 97. (note 1) 4 *Jacobs' Law Dict. tit. license,* 158. 2. That if not a grant, is it a covenant, that *Richardson* shall use the way. *Bac. Ab. tit. Covenant,* 62. 3. A covenant to enjoy a right of way, operates as a grant. 3 *Com. Dig. tit Chimin.* (D) 60. 4. It is a private way, the public using it, and the sale of the land, over which

the way passes, after the grant, do not determine *Richardson's* right. *Allen vs. Ormond,* 8 *East.* 4. 4 *Jacobs' L. D.* 158. 3 *Cruse, Dig. tit. Way,* 115, *sec.* 22. 1 *Bac. Ab. tit. Authority,* (P) 321. 3 *Stark. Evid.* 1680, (*note* 1.) 5. The road mentioned in *Bond's* grant is not a public highway. -In this State, public highways are only created according to legislative authority, and no indictment would lie for a nuisance on this road. It results from these positions, that *Richardson* had a right of way secured to him by *Bond's* grant, which still existed at the time of the obstruction complained of. It is admitted, that the special damage laid was not proved; but the bill of exceptions admit an obstruction to *Richardson's* private way, if it exist in point of l w, and this was sufficient proof to enable the jury to find for the plaintiff, disregarding the special damage, and of course authorised the County Court, to refuse the defendant's prayer.

6. In this case, notice of the existence of the way, is to be presumed in *Hays,* he being a purchaser subsequent to the opening of the road. *Whitbeck vs. Cook,* 15 *Johns. Rep.* 483. 7. The covenant of *Bond* to *Hays,* that the former was seized and had power to convey without incumbrance, is not broken by the fact, that a right of way existed over the land to which the covenant referred. A right of way is a mere easement. It does not diminish the *interest* of the vendee in law. 3 *Cruse,* 110. *Whitbeck vs. Cook,* 15 *Johns. Rep.* 483. 8. The sale of the land does not determine the right of way ; for the grantor after the execution of his deed, cannot lawfully do any act to prejudice the rights of his grantee. *Jackson vs. Aldrich,* 13 *Johns. Rep.* 106. *Allan vs. Ormond,* 8 *East.* 4.

It has been contended that the deed from *Bond* to *Richardson,* is a grant which ought to have been recorded to take effect against the defendant, a purchaser without notice. This position is relied upon to reverse the refusal of the County Court, to instruct the Jury that the plaintiff was not entitled to recover. If the position is correct, the judgment of the court below is erroneous. It is denied that the defendant is a purchaser without notice. His deed shews an unusual and remarkable circum-

stance, that the ancient ceremony of livery of seisin was actually performed in this case; long before this, the road had been opened and used. The existence of the road was palpable to the defendant when he took actual possession. In addition to this, upon the authority *Whitbeck* and *Cook* before cited, he is presumed to have notice of a road existing and used before his purchase. If then, notice to the defendant can affect this cause favorably to the plaintiff, the defendant had both actual and constructive notice of the existence of the road, when he accepted his deed for the land over which it passed. It is however conceded that if our acts of Assembly require this grant of way to be recorded, then it is void in a court of law, and the plaintiff cannot recover.

The only acts upon the subject, are those of 1715, ch. 47, and 1766, ch. 14., and it is supposed that neither reach this case. That the act of 1715 does not for this plain reason, that the 8th section, which requires deeds to be recorded, relates to deeds of "bargain and sale only." It declares that no manor lands, tenements or hereditaments whatsoever, shall pass, alter or change from one to another, whereby the estate of inheritance or freehold or for above seven years shall be made or take effect in any person or persons, or any use thereof to be made by reason of *any bargain and sale only*, except the deed or conveyance by which the same shall be intended to pass, should be made by writing, indented, and sealed, &c.

The construction of this act has always confined it to deeds of bargain and sale—See preamble to act 1766, ch. 14. Other assurances were not within its operation—the grant in question is not a deed of that character—there is no consideration moving from *Richardson* the grantee to *Bond* the grantor. It wants that leading distinctive characteristic of a deed of bargain and sale.

The next inquiry is whether the act of 1766 affects the plaintiff. It enacts that no "estate of inheritance or freehold, or any declaration or limitation of use or any estate for above seven years shall pass or take effect, except the deed or conveyance, by which the same shall be intended to pass, shall be acknowl-

edged in the county where the lands, tenements or hereditaments do lie and also be enrolled," &c. This act applies to all forms of assurances, and the only inquiry is, whether the subject matter of this conveyance is referred to in the act. It is clearly not an estate of inheritance, nor a freehold—nor a declaration or limitation of a use. These are legal technical terms, which do not apply to this grant. The only enquiry now is, whether any estate, and if any, whether one for above seven years, is created by this grant? The term estate is significant of interest—in wills it is said to include the whole interest—in this act of Assembly associated as it is, with estates of inheritance, freehold, uses, terms for years, it refers to estates, in which as in the other cases, the grantee has an exclusive interest. Now so far from the grantee having an exclusive interest, nothing is more familiar, than an interest in one, and a mere right of way in another, an easement without any possessory right or remedy. In this case the thing granted to *Richardson*, is a right of way in gross. He could not alienate nor sell. It was in effect a mere privilege valuable because of its consequences, but unquestionably having no direct tendency to increase his estate. This most significant term estate, is applied to inheritances, freeholds and terms for years—and is as particularly indicative of a valuable interest in one case as in another—the terms " estates for years" have always been applied to leases—and carry with them inseparably the idea of a valuable vendible interest in the grantee. In the enacting clause of the act of 1766, the language differs from the same clause in the act of 1715. The latter declares that " no manor lands, tenements or hereditaments shall pass"—which the former declares that " no estate of inheritance, freehold or use or for above seven years shall pass"—why this distinction in the language, entirely of a technical cast, if the legislature did not take and adopt the known difference between a privilege, and an interest? The preamble of the act of 1766, declares also that " a general registry of all deeds and conveyances of *land* would secure creditors, &c." This confirms our views, and sustains the opinion of the court below.

DORSEY, J. delivered the opinion of the court at this term.

The only question arising on the first bill of exceptions is, were the court below, right, in compelling a witness to *give* testimony, which might subject him to a civil action or pecuniary loss, when offered by the party against whom, his interest would prompt him to testify? On this subject, we have no doubt, since the decisions of this court, in the cases of *Taney vs. Kemp*, and the *City Bank of Baltimore vs. Bateman.* In Maryland, the rule of law is settled, that no person who is called as a witness, (not being a party to the suit) can refuse to give testimony on the ground, that he may thereby become liable to a civil action, not of a penal nature, or sustain pecuniary loss, or that the verdict may be used as evidence against him, in some other civil proceeding then pending, or which may thereafter be instituted. Of the opinion of the County Court on this point in the cause, we entirely approve, but we cannot concur with them, in the decision they have given in the second bill of exceptions. It is wisely settled agreeably to the suggestions of public justice and expedience, that a witness on the *voir dire* may by the party objecting to his examination in chief, for the purpose of shewing his interest, be called on to state the contents of written instruments, which are not produced, and the reason assigned is, that the party objecting could not know previously, that the witness would be called, and consequently might not be prepared with the best evidence to establish his objection. For authorities on this subject, *vide* 1 *Stark. Ev.* 120. 2 *Stark. Ev.* 756, and the cases there referred to. In the third bill of exceptions is involved a question of much greater difficulty and doubt. If the instrument of writing given by *Bond* to the appellee, be considered a grant of an easement or right of way, (as according to law and the apparent intent of the parties, it may be, if viewed without reference to our acts of registration) then it becomes necessary to examine what is the character of the interest transferred, and how far it is a subject operated on, by the act of Assembly of 1715, *ch.* 47, entitled an act for quieting possessions, enrolling conveyances, and securing the estates of purchasers." It has been urged that the right transfer-

red, is nothing more than a tenancy at will. But such a con-struction is not warranted by the terms of the contract. It is not a demise, or conveyance to continue, in the appropriate phraseology of such tenures "*quamdiu ambobus partibus placuerit,*" and which, by the unambiguous terms of its creation, must expire as soon as its continuance ceases to be the will of both parties; but it is a grant whose duration is not to terminate until the will of both parties unites for its discontinuance. In the language of the agreement, it is to continue until *Richardson and Bond shall agree, it shall be shut up or altered.* *Bond's* determination alone, therefore, as evidenced by his conveyance to the appellant, is not a happening of the contingency on which the estate was made to depend. It is unnecessary to determine whether this easement was to expire with the life of *Richardson,* or to remain after his death for the use of the public; in either event, enrollment is necessary, if the subject matter of conveyance be such as is contemplated by either of the afore-mentioned acts of Assembly. The title of the first act of Assembly distinctly sets out its object, viz: the " quieting possessions, enrolling conveyances, and securing the estates of purchasers;" and for the accomplishment of that most desirable end, the 8th section provides that " no manors, lands *tenements or hereditaments whatever,* within this province, shall pass, alter or change, from one to another, whereby the state of inheritance or free-hold, or any estate for above seven years shall be made or take effect in any person or persons, or any use thereof to be made, by reason of any bargain and sale only, except the deed or conveyance by which the same shall be intended to pass, alter or change, be made by writing, indented and sealed, and the same be acknowledged in the provincial court, or before one justice thereof, or in the County Court, or before two of the justices of the same, where such manors, lands, tene-ments, or hereditaments lie, and enrolled within six months after the date of such writing indented as aforesaid." The first enquiry to be disposed of is, whether the estate or right designed to be transferred by the grant, be an hereditament, (as that is the most comprehensive term, including both lands and tene-

ments.) In 2 *Bla. Com. p.* 20, an incorporeal hereditament is defined to be "a right issuing out of a thing corporate (whether real or personal) or concerning, or annexed to, or exercisable *within the same,*" which incorporeal hereditaments, the learned commentator states in the succeding page, "are principally of ten sorts, advowsons, tithes, commons, ways, offices, dignities, franchises, corrodies or pensions, annuities and rents," and in page 35 of the same book, it is said "a fourth species of incorporeal hereditaments is that of ways, or the right of going over another man's ground. This may be grounded on a special permission, as when the owner of the land, grants to another the liberty of passing over his grounds, to go to church, to market, or the like ; in which case the gift or grant is particular, and confined to the grantee alone, it dies with the person." These references will suffice to show, that the way in question, is an hereditament.    Is *it then such an hereditament as the* act of 1715 can operate on? is the next question to be considered. That act of Assembly, as appears by the preamble to the act of 1766, is only applicable to such conveyances as operate by way of bargain and sale, and it is superfluous perhaps to say, that in all our legislation upon the subject of enrollment of deeds, where "hereditaments" are spoken of, they are such as attach or relate to realty, not to personalty.    If the deed from *Bond* to *Richardson* had been for the transfer of a right of way in *esse,* there can be no doubt, but that it would pass by deed of bargain and sale; and that for the legal transfer of such an interest by deed of bargain and sale, all the solemnities required by the act of 1715, must have been pursued.    But such is not the case before us ; it is an attempt to transfer, not a way already in *esse,* but a way *de novo,* which may be done by grant or lease ; but cannot be effected by way of bargain and sale.    As authorities to that effect, see *Beaudley vs. Brook, Cro. Jas.* 189. 1 *Ba. Abr.* 468, *tit. Bargain and Sale, letter B, and Shep. Touch.* 226, and the cases there cited.    It is assuredly no disrespect to the Legislature of 1715 to suppose, that at the time of their passage of the law referred to, they may not have recollected this technical, subtle distinction, between the mode of transfer-

ring rents and ways in *esse*, and *de novo*, and they may therefore
have acted under the impression, that their act, chapter 47, af-
fected the one in the same manner that it did the other. But,
whether they did, or did not labor under this misconception of
the law, according to our view of the rational, liberal construc-
tion, that ought to be given to acts of the Legislature, upon
such subjects as the present is wholly immaterial.

Experience having shown, according to the preamble to the
act of Assembly of November session, 1766, chapter 14, "that
the good end and purposes of the said act (meaning the act of
1715) are now in a great measure eluded by the frequent use of
conveyances by feoffment, lease and release, limitation, and de-
claration of uses, and other modes of conveying ; and whereas
a general registry of all deeds and conveyances of land, would
very much tend to the security of creditors and purchasers, the
preservation of titles, and thereby, to the advancement of the
value of real estates, and particularly, to prevent abuses and
deceits, by mortgages, and the purchase of pretended titles;"
the Legislature enacted "that after the first day of May next,
(1767) no estate of inheritance or freehold, or any declaration
or limitation of a use, or any estate for above seven years, shall
pass or take effect, except the deed or conveyance by which the
same shall be intended to pass or take effect, shall be acknow-
ledged in the provincial court, or before one of the Justices
thereof, in the county court, or before two justices of the same
county, where the lands, tenements, or hereditaments conveyed
by such deed or conveyance do lie." It has been urged, that as
the preamble to the act of 1766 speaks merely of a general
registry of deeds or conveyances of " land," that no recording is
required by it, but of deeds or conveyances, by which the land
itself passes; and that this construction is strongly supported by
the words of the enacting clause, which requires the deed to be
recorded in the county where the lands, tenements, or heredita-
ments do lie ; and the clerks to keep books in which the deeds
are to be registered, and alphabetted in the name of the parties
thereto, with the name of the land and quantity of acres. But
these suggestions appear much more technical and critical than

substantial.    Both acts of Assembly being in *pari materia*, must be construed together as one system.    The first law having embraced incorporeal tenements and hereditaments, ingenuity itself cannot insinuate a reason why they should not be included in the second.  · To confine that act of 1766 to conveyances only, by which the land itself passes, is utterly subversive of that complete system of enrollment, manifestly designed to be established ; is inconsistent with that part of its preamble, which sets out the moving inducement to legislate on the subject to be, to remedy the evil, that the act of 1715 extends only to conveyances of lands, tenements and hereditaments, by way of bargain and sale only, and that other modes of conveyance (meaning by necessary implication of lands, tenements and hereditaments,) had been frequently used to the elusion of the good ends and *purposes of that law* ; and is also inconsistent with that part of the preamble, which declares as the *objects of the* Legislature in adopting a general registry, to be " the security of creditors and purchasers, the preservation of titles, and thereby the advancement of the value of real estates."    If contradictions, or incongruities exist between the preamble and enacting clause of a *statute*, the latter shall prevail.    There is, however, no such contradiction or incongruity, in the act in question; construe the word "of" before the word "land," to mean *concerning* or *relating to* (meanings of which it is susceptible, and not unfrequently bears) and perfect harmony is at once restored.  By no rule of interpretation can the force of the words " tenements or hereditaments" be evaded, or their introduction into the enacting clause be accounted for, consistently with this confined exposition attempted to be imposed on the act of 1766.  As to the stress which has been laid upon the words " do lie," to prove that they can relate to lands only (as incorporeal hereditaments, it is said cannot be alleged to lie any where) it appears to be a construction *too subtle*, not to say hypocritical to have entered into the consideration of the Legislature in passing the law.    Nor are we aware that it would be an unwarrantable invasion of the rules of grammar, of the import of terms, or the licensed figures of speech, to say, that a right of way lies in a

county where it exists and is exercisable.   As to the alphabet to be kept by the clerk, with the entries to be made of the name of the land, and number of acres, those requisites are applicable to the transaction, as important, and necessary to the public in recording a deed transferring an incorporeal hereditament concerning land, as if it had been a conveyance of the land itself.   If this cramped interpretation of the act of 1766 were to prevail, by no possible deed of conveyance in *pais* could the husband and wife uniting, grant a rent charge or right of way, on the lands of the *feme*, so as to bind her or her heirs after the death of her husband, and the public, and the profession, would learn with astonishment at this day, that notwithstanding our system of general registry—a grant of a rent charge *de novo*, equal to the whole value of the land on which it attaches, and rights of way, estovers, &c. to any supposable extent, may be legally created, without any entry thereof appearing on the public records; but if a rent charge or right of way in *esse* be conveyed by bargain and sale (the usual mode of conveyance) then all the solemnities of acknowledgment, registration, &c. are required.   *Cui bono?*   It adds nothing to the security of creditors or purchasers of land, or the preservation of their titles, because such enrollment furnishes them no means of ascertaining the existence of the conveyances.   The alphabets discloses not the name of any person, as a party to such conveyance, who ever owned the land, nor in your application to the Clerk of the Land Records, can you inform him in whose name the search is to be made.   It is a matter of minor importance to creditors or purchasers, to whom a rent charge is payable, (they are rarely for any length of time left uninformed upon that subject) but it is a matter of vital importance to them to know, whether there be a rent charge or not.   In the registry of deeds, therefore, it is an object of ten times more importance " to the security of creditors and purchasers, the preservation of titles, and the advancement of the value of real estates" that a record should be made of *de novo* rent charges, and incumbrances on land, than of those in *esse*.   The former are always sought for, and might be easily found by creditors and

purchasers, whilst the latter are rarely if ever sought for, and could not be found, but by reference to every deed recorded in the Land Records, since the date of the patent of the tract of land, into the title of which the examination may be made.

We are aware that it has been ruled in England, that a license to use a beneficial privilege upon the land of another is *no estate or interest* in the land, and notwithstanding the statute of frauds may be granted without writing. In the case of *Wood vs. Lake, Say. 3*, it was decided that a parol agreement for liberty to stack coals upon the land for seven years, and to have the sole use of that part of the close upon which the liberty to stack coals was given, is neither an estate or interest in or out of land. According to this decision, if *A* by parol for valuable consideration agree that *B* may stack coals upon his lands for ninety-nine years, renewable for ever *;* and that *B* and his assigns during that period, have the sole use of the lands, such agreement is unaffected by the statute of frauds, and though operative to the full extent of its terms, transfers no estate or interest in the lands. Yet in the leading case of *Crosby vs. Wadworth*, 6 *East.* 602, a parol sale of a standing crop of mowing grass then growing, was held to be within the statute as being *an interest in the land.* In *Wood vs. Lake* the judges rely on the case of *Webb vs. Paternoster*, reported in *Palmer*, 71, and *Popham*, 151. Where a parol license to stack hay upon land was held a charge upon it, in whosoever hands it might come; but say the court, it is countermandable unless a time certain is fixed for its enjoyment, " as if I license one to dig clay in my land." This case let it be remembered, was before the statute of frauds; and therefore could be no warrant for the decision in *Wood vs. Lake.* In fact the only question which could have arisen in *Webb vs. Paternoster*, as to the necessity of *writing* to the transfer of such an interest, as that attempted to be created, must have been on the old principle of the common law; that an incorporeal right could only pass by deed. But if the opinions of the court in that case are to govern cases since the statute of frauds, are we prepared to go the length to which those opinions must carry us? To determine that a parol license to dig clay in land,

is the same as the privilege to stack hay on it; but gives no interest in the land, though a charge upon it into whosoever hands it may come. Or to illustrate the principle still further, that an oral license to dig coal or iron oar in mines for five hundred years, and agreeably to the case of *Wood vs. Lake,* to have also the sole use of the land, in which the mines are situated during that period, passes the right intended to be conferred, and charges the land therewith, is unaffected by the statute of frauds, and *yet* creates no lease, estate, or interest in the land. It cannot be denied that the case of *Wood vs. Lake,* has in England been followed by subsequent adjudications. As late as the year 1818, in *Taylor v s. Water,* 7 *Taunt.* 384, *Gibbs* chief justice of the *Common Pleas,* states that a license to enjoy a beneficial privilege on land may be granted without deed, and notwithstanding the statute frauds without writing." It is a license not an interest in the land." But these decisions are irreconcilable with the opinion of *Lord Ellenborough* in *Fentiman vs. Smith,* 4 *East.* 107, where the defendant having orally granted permission to the plaintiff to pass water to his mill by means of a tunnel over defendant's land; who assisted in making the tunnel, but afterwards obstructed the water, in an action brought on account thereof, it was decided that " the title to have the water flowing in the tunnel over the defendant's land could not pass by a parol license without deed." *Sugden* too in his law of Vendors, page 57, attacks the case of *Wood vs. Lake* with great effect, and pronounces it "to be in the very teeth of the statute, which extends generally, to all leases, *estates, or interests.*" In *Thompson vs. Gregory,* 4 *John.* 81, the *Supreme Court* of *New York,* (of which *Kent,* and *Spencer* were members) determined that a right to overflow the land of another, by the erection of a mill dam, was an incorporeal hereditament, which could be transferred by deed only, and not by parol permission to use it; and if it were otherwise that the assignment of such an interest, since the statute of frauds must be in writing.

With such strong reasons and high authority for questioning the soundness of the principles adjudicated in *Wood vs. Lake,* and subsequent cases which have followed it, we feel no dispo-

sition for the sake of analogy to give a similar interpretation to
our act of Assembly of 1766, regulating the execution and en-
rollment of conveyances of real property, to that given in *Wood
vs. Lake* to the statute of frauds.    The language of its provi-
sions comprehends the privilege attempted to be conferred by
the instrument before us, and the policy of the law, the interests
and convenience of the public, forbid that we should restrict its
operation.    In no other way can the leading object of the legis-
lature, the "securing the estates of purchasers" be effected;
their design was, that all rights, incumbrances, or conveyances,
touching, connected with, or in any wise concerning land, should
appear upon the public records.    If parol or unrecorded licen-
ses of the character of that in controversy were tolerated, frauds
and losses upon purchasers would be innumerable as may read-
ily be imagined.    A man might pay and receive a deed with all
the solemnities of law, and covenants which could be devised
(short of a general warranty which is rarely given) for a hun-
dred acres or more of valuable meadow land, without the
knowledge of the semblance of a right in any one by which its
value could be imagined; on the next day he may learn that his
purchase is a mockery; that his neighbour under an oral license
from some remote proprietor of the property purchased, (of
which the vendor was ignorant) is about to inundate every foot
of it by the erection of a mill-dam below, his remedy can no
where be had.    But suppose it were even admitted, that the
principles established in *Wood vs. Lake,* and the cases bottom-
ed upon it, stand free from all exception, it is humbly conceived
that the case now under consideration is clearly distinguishable
from them.    The statute of frauds on the construction of which
they arose, speaks only of estates or interests *into or out of
lands,* whilst our act of Assembly embraces estates in lands,
*tenements* or *hereditaments,* and if it be conceded, as it must be,
that the right of way in question is an " hereditament," it surely
would be stretching technicality to the verge of quibbling, to say
that the right which one has in an " hereditament" is not his
" estate" in it.

If we entertained even strong doubts as to what originally should have been the construction of this act of Assembly (of which we have none) they would in a moment be removed by adverting to the single fact, which the whole land records of the State will demonstrate, that from the year 1767 to the present day, grants and conveyances of *de novo* rent charges, rights of way, &c. have been as uniformly acknowledged and recorded, as deeds conveying the land itself. This contemporaneous unvarying construction of the act of Assembly for sixty years, ought not to be disregarded, but upon the most imperious and conclusive grounds. If there be error in it *" communis error facit jus."* We are sensible that we have given just cause of complaint at the unusual length in which this subject has been treated, but the deep interest felt in it by every landholder in the State must be our apology.

We concur in the opinion given by the County Court in the first bill of exceptions, but think their opinions in the second and third are erroneous, and therefore

**JUDGMENT REVERSED.**

(*Note.*) The decision of the court of *King's Bench* in *Hew-lins vs. Shipman,* 5 *Barn. and Cres.* 221, has been met with since writing the above opinion, by which it appears that the cases of *Webb vs. Paternoster, Wood vs. Lake,* and *Taylor vs. Waters,* have been so shaken, that they may be considered as virtually over-ruled, so far as regards the granting of easements by parol.