MARTIN D. HESS, Treasurer of Carroll County,

*vs.*

THE WESTMINSTER SAVINGS BANK.

*Taxation: savings banks; mortgages owned by——. Statutes: construction; long usage. Section 187 of Article 81 of Code; Chapter 508 of Acts of 1916.*

The stockholders of the Westminster Savings Bank were taxed upon their shares of the bank stock; it was *held,* that the mortgages and the judgments held by the bank were not taxable under Section 187 of Article 81 of the Code (Vol. 4), nor under Chapter 508 of the Acts of 1916.          p. 131

The construction of tax laws that has been long and universally adopted by officials throughout the State ought not to be disregarded, except on the most imperious grounds.          p. 132

*Decided March 5th, 1919.*

Appeal from the Circuit Court for Carroll County. (Thomas, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Pattison, Urner, Stockbridge and Constable, JJ.

*Theo. F. Brown,* for the appellant.

*Ivan L. Hoff* and *Francis Neal Parke* (with whom was *Guy W. Steele* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, Martin D. Hess, Treasurer of Carroll County, brought suit in the Circuit Court for that county against the appellee, the Westminster Savings Bank, to recover the tax claimed to be owing by it to the county for the year 1917 on interest covenanted to be paid on mortgages, and on interest received on judgments, held by appellee.

An agreed statement of facts was filed and the Court, sitting as a jury, found for the defendant, and upon such finding a judgment was accordingly entered. It is from that judgment this appeal is taken.

The plaintiff's three prayers were refused and the defendant's prayer, asking for an instruction that there was no evidence legally sufficient to entitle the plaintiff to recover, was granted.

It is under section 187 of Article 81, Volume 4 of the Code (Chapter 516 of the Acts of 1916) that the tax on the interest covenanted to be paid on mortgages, is sought to be recovered in this case. This section reads as follows:

"All mortgagees or assignees, holding mortgages on real estate of record in Montgomery, Frederick and Carroll Counties, shall annually pay a tax of eight per cent. upon the gross amount of interest covenanted to be paid each year to the mortgagee or his assigns by the mortgagor, to be collected by the proper authorities as other taxes for county purposes in the several above especially enumerated counties are collected."

And the tax on interest on judgments is here sought to be recovered under Chapter 508 of the Acts of 1916, which provides

"that plaintiffs in all judgments recorded in the office of the Circuit Court for Carroll County shall pay annually a tax of 8 per centum upon gross amount of interest paid each year by the defendant or defendants to the plaintiff or his assignee, to be collected by the County Commissioners of Carroll County by suit if necessary."

The taxes so collected to be for county purposes only. The question to be determined is, were these statutory provisions intended to apply to mortgages and judgments owned and held by the defendant, a corporation having its capital stock divided into shares that are subject to taxation under the laws of this State?

The powers and privileges of the Westminster Savings Bank, a corporation formed under the provisions of the Code of Public General Laws of Maryland, were enlarged by Chapter 302 of the Acts of 1908. By it full power was given to the corporation to engage in and conduct a general banking business, which it has done since that time.

Section 153 of Article 81 provides that:

"The president, cashier, or other chief officers of any bank or banking association, * * * doing business in this State, shall * * * each year report to the State Tax Commissioner, a true and correct statement of the number of shares of capital stock in such bank or banking association, and the par value of each share, with such information in regard to the value of the same as may be required by said Commissioner."

And by the succeeding section (153 A) it is further provided that in making such annual report to the State Tax Commissioner, such president or officer

"shall expressly state in such report the amount of the capital stock paid in, the amount of surplus, and the amount of undivided profits, together with such other information as may be required by said Commissioner under the provisions of the preceding section."

And by section 159 of said Article, such president or other officer

> "shall annually * * * furnish to the County Commissioners of each county or the Appeal Tax Court of Baltimore City * * * a list of the said stockholders, so far as their place of residence may be known to such officer, together with the number of shares of stock held by each."

It is then provided by section 162 of Article 81 of the Code that such president or other proper officer, at the time of making the returns of stockholders to the County Commissioners and Appeal Tax Court of Baltimore City, shall furnish to the County Commissioners of each county, in which it is the owner of any real estate and other property mentioned in said section, and to the Appeal Tax Court of Baltimore City, if any such property owned by it be located in the city, a true statement of such property, to be valued and assessed by said County Commissioners and Appeal Tax Court respectively to the said bank or incorporated institution, and when so valued and assessed duplicate certificates of such valuation shall be given to its president or other officer, whose duty it shall be to transmit one of said certificates to the State Tax Commissioner, who, in order to ascertain the taxable valuation of the shares of stock in such bank or corporation, shall deduct the assessed value of such real estate, etc.,

> "from the aggregate value of all shares of such respective banks, corporations or joint stock companies and divide the remainder by the number of shares of the capital stock or shares of such respective banks, corporations, or joint stock companies, and the quotient shall be the taxable value of each of such respective shares for State purposes."

By Chapter 797 of the Acts of 1914, or section 162-A of the Code of Public General Laws, Volume 3, since amended by Chapter 294 of the Acts of 1918, so as to include within its provisions trust companies:

"The State Tax Commissioner (now the Tax Commission) shall take into consideration, in determining the taxable values of the shares of stock of any bank (State or National), located and doing busines in this State (except in cases of such banks as are in liquidation), the capital stock paid in, its surplus and undivided profits, as provided for in Section 153A of this Article," and when the value of the stock is ascertained pursuant to the provisions of Section 162, there shall "be paid on such valuation one per cent. (and no more) in all for all County, City and Municipal taxation, which said taxes shall be distributed among the different jurisdictions entitled to tax the same shares, in the proportion which the rate of each jurisdiction, bears to the aggregate of the rates of such jurisdiction, and said tax shall be in lieu of all other taxes whatsoever, for County and Municipal purposes upon the shares of stock and the owners of stock in such banks."

The Westminster Savings Bank, the appellee, complied with the aforegoing statutory provisions, and in its report to the State Tax Commissioner, dated the 21st day of January, 1917, it is stated that the amount of stock issued was $50,000, and that at such time its surplus was $110,000, and its undivided profits $34,717.34. It is also shown by the statement that the deposits at that time amounted to $1,444,-718.22, of which amount $1,389,578.25 were savings deposits, upon which it paid interest; while among its resources are found the following items: Loans and Discounts, $140,-451.77; Stocks, Bonds, Securities, etc., $943,372.65; *Mortgages and Judgments of Record,* $458,789.96.

Upon the statement so made to the Tax Commission, it valued and assessed to the stockholders of the bank its capital stock, consisting of 5,000 shares of the par value of $10, at $40.43 per share. The rate thereon for county and municipal taxes was one per cent., to be apportioned between the county and town of Westminster, according to the provisions of the

statute, while the rate thereon for State purposes was the regular State rate. In addition to these taxes to be paid by the bank were the State, county and municipal taxes upon the real estate of the bank, at the regular State, county and municipal rate.

As shown by the agreed statement of facts, the taxes levied against the bank and its stockholders for the year 1917, amounting in all to $2,847.75 were promptly paid and of this amount $2,561.46 was paid on the assessed valuation of the stock of the bank, and $286.29 on its real estate.

In addition to the taxes so paid, the appellant is attempting to recover by this suit a tax amounting to $2,128.08 upon the interest covenanted to be paid on mortgages, and the amount of $104.75 on interest received upon judgments, held by the defendant.

The inquiry here is not as to the validity of section 187 of the Code, and Chapter 508 of the Acts of 1916, if they apply to the defendant corporation, but the question presented is, were such statutes intended to apply to such corporation, and we have referred to the method of ascertaining the value of the stock as a basis of taxation and the imposition of the tax against the holders of such stock, because in our opinion they reflect upon the intention of the Legislature in the passage of said Acts, when at such time the stockholders were already burdened with the tax upon the stock of the company.

The value of the stock of a corporation such as the one before us, is dependent upon its financial status, and the Tax Commissioner in ascertaining the value of the stock should not only have before him the amount of the capital stock paid in, its surplus and undivided profits, but such other information as will enable him to accurately or more correctly determine the financial condition of the bank and the true value of its stock. Its financial status, of course, depended upon the amount of its liabilities and the extent of its resources to meet such liabilities.

In this case, the liability of the bank to its depositors alone amounted to nearly a million and a half dollars, and among

its resources are found the mortgages and judgments here attempted to be taxed under said statutory provisions. If, in addition to the tax paid by the stockholders on the stock held by them, the corporation is to be taxed upon the mortgages and judgments held by it as a part of its resources, which mortgages and judgments amount to more than twice the assessed value of its capital stock, without considering said mortgages and judgments at all in relation to or in connection with the liabilities of the bank, such tax, we think, would be both oppressive and unjust and inconsistent with the general spirit of the tax laws of this State.

In view of the fact that the stockholders of the bank, upon whom any and all taxes imposed upon the corporation must ultimately be borne, are already taxed upon the shares of the stock of the bank held by them, it should plainly appear that it was the intention of the Legislature that the mortgages and judgments held by the bank, which were largely involved in establishing the value of the stock which formed the basis of taxation against the stockholders, should be taxed against the corporation. We think, after a careful examination of all the provisions of this Article relating to taxation, that such an intention on the part of the Legislature is not shown, and this is the view that has been universally adopted by the officials throughout the entire State, whose duty it has been to collect the taxes imposed by said statutory provisions.

The law, as originally passed, Chapter 120 of the Acts of 1896, applied to the entire State, and it so continued to apply for eight years, until Baltimore City and several counties of the State were eliminated therefrom by Chapter 405 of the Acts of 1904. Other amendments of the Acts were made from time to time by which counties were either eliminated from or included within its provisions, but as stated in the agreed statement of facts:

> "Until the institution of this suit there has never been any attempt to collect from a bank in Carroll County, or any resident of this State, by the State or county officials charged with the duty of collecting

taxes, any tax on mortgages or judgments or to en-
force any public, general, or local law imposing a tax
on mortgages or the income thereof, against any bank,
and the tax claimed in this suit has not been paid by
the defendant or any part thereof."

This unvarying construction of the statute for such a lapse
of time ought not to be disregarded but upon the most im-
perious grounds, which are not found in this case. *Hays* v.
*Richardson,* 1 G. & J. 366; *Baltimore* v. *Johnson,* 96 Md.
737; *Baltimore* v. *Machen,* 132 Md. 624.

It is true that the local statute for Carroll County, provid-
ing for the imposition of a tax on interest received upon judg-
ments, was not passed until 1916, yet similar statutes apply-
ing to other counties of the State, were enacted and in force
at a much earlier date, and the officials, clothed with the duty
and responsibility of collecting the tax, have universally con-
strued these statutes as not applying to corporations of the
character of the defendant, and no effort has ever been made
to collect such taxes from them, so far as we are informed.

The Court acted properly in granting the defendant's
prayer, and the judgment of the Court below will be affirmed.

*Judgment affirmed, with costs.*