BUCK GLASS COMPANY *v.* WILLIAM S. GORDY,
COMPTROLLER

[No. 53, April Term, 1936.]

*Decided June 20th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter H. Buck* and *R. Contee Rose,* with whom was *Eben F. Perkins* on the brief, for the appellant.

*William L. Henderson, Assistant Attorney General,*
and *Edgar Allan Poe, Jr., Special Counsel,* with whom
was *Herbert R. O'Conor, Attorney General,* on the brief,
for the appellee.

BOND, C. J., delivered the opinion of the Court.

The question on this appeal is whether the appellant,
a manufacturer of glass bottles, is, with respect to bottles
made and supplied principally to sellers of milk and beer,
subject to the Emergency Gross Receipts Tax of one per
cent. imposed by chapter 188 of the Acts of 1935, Code,
(Supp. 1935), art. 56, secs. 72A to 72Q, on the privilege
of engaging in the business of selling at retail. The pro-
visions of the act were described in the opinions in the
cases of *Jones v. Gordy,* 169 Md. 173, 180 A. 272, and
*State v. Christhilf,* 170 Md. 586, 185 A. 456, at this term
of court. The appellant filed a bill in equity to restrain
exaction of the tax with respect to sales of the bottles,
the appellee answered, and after testimony taken the
court below found and decreed that those were retail sales
within the purview of the act, and that the appellant was
taxable in respect to them. The appeal has followed.

The exact number of bottles supplied to the dealers is
not stated, but it is agreed that only large or gross quan-
tities have been sold and supplied. The total yearly tax
would, if collectible, amount to approximately $4,500. The
Fairfield-Western Maryland Dairy Company, for its busi-
ness of selling milk in Baltimore City and the vicinity,
keeps between 800,000 and 900,000 bottles in use, and
somewhat under ten per cent. of these have been pur-
chased from the Buck Glass Company. Only a compara-
tively few beer bottles were made in 1935, and a few
supplied to a Globe Brewing Company, which sells its
beer to vendees for resale.

The suppositions on which the tax was demanded of
the glass company were that, by virtue of explicit defi-
nitions in the body of the statute, all sellers of goods to
consumers, in whatever quantities, were taxed, and that
the glass company's vendees mentioned were in the posi-

tion of consumers. This court is not prepared to decide that the vendees were consumers within the meaning of the statute. But, assuming for the purposes of this case that they were, the court has come to the conclusion that, because of a restriction in the title, the statute cannot properly be construed to include among the sellers to be taxed the producers or dealers selling in gross quantities.

The title does not, in words, refer to the business of selling to consumers as the subject of the tax. On the contrary, it refers only to "the business of selling tangible personal property at retail." Sales to consumers are specified only in the definitions and other provisions in the body of the act. So far as there may be a difference in the subjects stated in the one way and the other, it is important because of the requirement of the State Constitution, article 3, sec. 29, that the subject of an Act of Assembly shall be described in its title. A title which is descriptive to some extent must go far to fix the understanding of its purpose among legislators and interested members of the public. "Bills are sometimes read, especially the first time, by their titles only, and the titles only are spread upon the journal." *Stiefel v. Maryland Institution for the Blind,* 61 Md. 144, 148. And it is the main purpose of the constitutional provision to prevent enactment under a misconception by reason of a misdescriptive title. "The object of the requirement of the Constitution is that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted." *Levin v. Hewes,* 118 Md. 624, 632, 86 A. 233, 235. It follows that a restriction in the title must either confine the operation of the act to conform to that description, if such a construction is possible, or render the act void to the extent of the conflict. *Scharf v. Tasker,* 73 Md. 378, 383, 21 A. 56; *Luman v. Hitchens Bros. Co.,* 90 Md. 14, 44 A. 1051; *Weber v. Probey,* 125 Md. 544, 551, 94 A. 162. In the present instance, as the title announces that the tax is one upon the business of selling at retail, or a retail sales tax, it

seems probable that in the course of enactment of the law this was widely understood to be the effect of it.

"Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction for the purpose of either limiting or extending their operation." *State Tax Commission v. Harrington,* 126 Md. 157, 166, 94 A. 537, 540. And selling at retail means, in its common acceptation, selling by way of distributing, in smaller quantities, the gross quantities delivered by producers or wholesalers. It is an expression contrasting sales of the one kind from sales at wholesale, in the whole, or gross quantities. The distinction is a familiar one in state and county license laws. See Acts 1935, ch. 522; Code, art. 56, secs. 71, 247 and 248, the last section now repealed by Acts 1933, Sp. Sess., ch. 2; *Commonwealth v. Greenwood,* 205 Mass. 124, 91 N. E. 141. Sale to consumers, specified in the body of this act, is ordinarily retail selling, but not always; and sellers to consumers in the larger, gross quantities are not within the regular meaning of the word retailers. The Supreme Court of Pennsylvania, in a recent case on that meaning, *Commonwealth v. Bay State Milling Co.,* 312 Pa. 28, 167 A. 307, 308, said: "If the position of the Commonwealth were to be sustained, every great steel company which sells its product in large quantities to other concerns to be manufactured would be a retailer, every coal mining company vending its coal to a manufacturing company, it matters not in what quantity, would be a retailer, all lumber companies selling their product to those who changed its form by manufacturing would be retailers, and so through all the lines of industry. It cannot be possible that the legislative intent was to bring about such a contradiction in terms as that businesses which in common parlance are universally spoken of as wholesale businesses, for the purpose of taxation are to be converted into retailers, and to be taxed under a designation which in fact fits them not at all. The Commonwealth would have the tax levied, not by reason of how the alleged taxable sells his product,

but by what his vendee does with it." And see *Kentucky Consumers' Oil Co. v. Commonwealth,* 192 Ky. 437, 233 S. W. 892; *Grayburg Oil Co. v. State* (Tex. Com. App.) 3 S. W. (2nd) 427.

The title of a Retailers' Occupation Tax Act enacted in Illinois in 1933 (Smith-Hurd Ann. St. ch. 120, sec. 440 *et seq.)* referred to it only as a tax on sellers of personal property at retail, and in the body of the act, as in that of the Maryland act, sales were defined to include all made to consumers. And in another, later act, the title was amended by the omission of the words "personal property at retail" and substitution of "upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." "This," said the Illinois Supreme Court, "leaves the definition within the scope of the title of this act, whereas, had no change in the title been made, it might well be contended that the definition adopted in the act was broader than a proper construction of 'sale at retail,' formerly contained in the title, would permit." *Franklin County Coal Co. v. Ames,* 359 Ill. 178, 184, 194 N. E. 268.

The court finds, then, that the Constitution of the State limits the application of the tax under the Maryland act to the subject described in the title, to the business of selling at retail, as thus interpreted. But the several definitions which extend it to manufacturers and wholesalers selling to consumers, as well as to the ordinary retailers, may have an effect within that description, and therefore are not invalid as necessarily extending beyond it. There are producers who sell their products directly to consumers at retail in the ordinary sense. Doubtless, wholesalers who are not producers may be found so engaging in retail selling as well. These, and all others selling at retail, are made subject to the tax. If it should happen in any case that more than one dealer should be selling at retail in the course of distribution of particular goods, then that one who sells to the consumer is taxed. This construction views the definitions as having purposes within the scope of the title, and therefore effectual

to that extent. And the court is of opinion that any one reading the act with its title, while it was in process of enactment, would probably have inferred that this was the intended scope of the tax.

A ruling of the comptroller applying the tax according to a contrary construction is cited, but of course there is no long settled administrative practice under so recent an enactment, and therefore nothing in the ruling to influence the construction of the act by the court. *Hess v. Westminster Savings Bank,* 134 Md. 125, 132, 106 A. 263; *National Cash Register Co. v. State,* 146 Md. 192, 126 A. 127; *Graham v. Joyce,* 151 Md. 298, 306, 134 A. 332.

The appellant is entitled to the injunction prayed.

> *Decree reversed and cause remanded for a decree to be passed in accordance with this opinion.*