BENJAMIN LONG *vs.* H. R. A. BUCHANAN.

*A License coupled with an interest, Irrevocable—Trespass.*

The plaintiff agreed to sell to the defendant her crop of corn, and to put it in her crib for him, for measurement, from which he was authorized to take it; the corn was to be settled for by a credit upon a mortgage which he and another held against her, at a price larger than the then current prices in the market, and a receipt was to be so given; the corn was placed in the crib, and the defendant invited to go for it, or notified to take it away at his pleasure. HELD:

That such an agreement constituted a license coupled with an interest or grant, which rendered it irrevocable; and the entry by the defendant upon the premises to remove said corn, was not a trespass.

APPEAL from the Circuit Court for Washington County.

This was an action of trespass *quare clausum fregit,* brought by the appellee against the appellant and Simon Long and Hamilton Downes. The declaration charged that the defendants broke and entered the plaintiff's close, and took and carried away a quantity of corn, the property of the plaintiff. The defendants pleaded several pleas, one of which justified the entry, &c., by the allegation of a sale of the corn by the plaintiff, and a license from her to enter for the purpose of removing it. The question raised by this plea, was the only one discussed before this Court.

*Exception:* The plaintiff proved by Leary that in December, 1863, he was requested by Simon and Benj. Long to be present at the measurement of corn on her farm, which Simon said he had purchased from her. He accordingly went there and found assisting in removing said corn, Benj. Long and certain other parties. That when he went there the door of the crib was locked, and the parties broke it open and took out the corn. This corn was raised on the farm of the plaintiff, and the crib was also on her farm. Helped to measure a part of the corn, and was paid for his services by Benjamin Long. Prior

Long vs. Buchanan.

to this, in December, he was present at an interview and conversation between the plaintiff and Simon Long, in the road, in relation to the sale of her corn, and he understood that the corn was sold to Simon Long at 70 cents per bushel. She also proved by Heiberger that he was present at the taking of the corn, with his wagon and hands, at the instance and request of Benjamin Long. And proved by herself that she was the owner of the farm called Woburn and the crib thereon, in which her crop of corn, raised in the fall of 1863, was placed; that the capacity of the crib was five or six hundred bushels; that the corn was taken from the crib, and that John Cook, the deputy sheriff, demanded the key to the crib twice, which she refused, and forbade his taking the corn, claiming it as her's, and that she had not sold it to Simon Long; that the lock was then broken open and the corn taken out, and the parties were engaged nine or ten days in taking it away, during all which time she persisted in her refusal to allow the corn to be taken away, and ordered the crib to be closed.

The defendants then proved by Simon Long, one of the defendants, that in October, 1863, the plaintiff was indebted to him, and to a certain Alexander Shafer, and to secure the payment thereof the plaintiff executed to them a mortgage upon most of her personal property, including her said crop of corn, and that after the execution of the said mortgage, he, the defendant, applied to the plaintiff to sell him the said crop of corn, and offered her seventy cents per bushel, and proposed to credit the value thereof on her said mortgage debt due to him, and to pay to her any balance remaining, and that she should have the corn put in her crib for him; that the plaintiff agreed to put the corn in the crib for him, and have the corn measured in the crib by measurement of the crib, but that she would not assent to said proposition without first consulting Alex-

ander Shafer; the defendants further proved by Jacob Thomson and the said Simon Long, that afterwards, at Downsville, in Washington county, the plaintiff and defendant Simon Long met, when the plaintiff told the said Simon that she had seen the said Shafer, who advised her to accept the proposition, and she then and there told the said Simon that the corn was his at seventy cents per bushel; and proved by the said Thomson that at the same time that the plaintiff told Simon Long at Downsville, that the corn was his at seventy cents per bushel, she also told him to come and get the corn. They further proved by Simon Long, that he gave the plaintiff a receipt for the said corn, but could not recollect whether or not he had entered a credit on the mortgage.

They also proved by Mrs. Shank, that afterwards and after the plaintiff had put the said corn or a large portion thereof in the crib, the plaintiff and the defendant Simon had an interview on the public road, in which Simon told her that he had engaged Heiberger's team to take the corn from the said crib, and that he would be there for it the next day, to which the plaintiff replied, that he could come and get the corn, it was his, that there was yet some of the crop not put in the crib, but lying in the field; that Simon declined to take any of the corn from the field, and told the plaintiff to put it in and not tax him with her tenant's work, and that he complained that she was imposing upon him work and duties; that the property belonged to her tenant, and that the corn should be put in the crib. They further proved by the said Simon, that on the evening of the same day of the interview above mentioned, he received notice from the plaintiff that she would not allow him to come upon her close and take away the said corn, and that thereupon he saw his brother Benjamin, and after telling him of his said purchase and all the facts con-

nected with the same, and also the fact that the plaintiff had forbid him taking away the said corn, sold the same to the said Benjamin as the same stood in the said crib; that Benjamin said he would consult counsel on the subject. They further proved, that at the time of the purchase of the said corn by the said Simon, the price given was in advance of the ruling market price; and further offered and read in evidence to the jury an agreement between the appellee and Simon Long and Alexander Shafer, whereby the said Long and Shafer were authorized to sell, or cause to be sold, at public sale, so much of the property mortgaged to them by the appellee, as would fully pay and satisfy the balance of principal and interest of the mortgage debt still due, together with all costs (including counsel fees) pertaining to the sale of said property, or the closing and satisfying of the said mortgage.

The defendants further proved that the corn, included in this agreement, was the same corn mentioned in the declaration, and that the number of bushels was ascertained and acquiesced in by the plaintiff by the measurement made at the time of taking it away. They further proved by Alexander Shafer, that the said Simon Long saw him and told him that he had offered the plaintiff seventy cents per bushel for her crop of corn, and that she told him she would not close the contract without seeing him, Shafer; that Shafer told Long the offer was a good one for plaintiff, and afterwards, the plaintiff herself told the witness of the offer made by Long, and took his advice whether she should sell her crop, and that the witness advised her to do so, as the price of corn then was only about sixty-three or sixty-five cents per bushel; and further proved by the said witness that it was then stated by the plaintiff that she had been offered seventy cents per bushel for her corn, and that the amount of corn was to be ascertained by measurement of the crib,

and that the corn was to be put in the crib and Long was to go there and take it away at his pleasure, all of which the witness afterwards communicated to the said Simon Long. They further proved by Benjamin Long that he got five hundred and forty-five bushels and three pecks of corn from the crib; that it was measured in a corn barrel as it was taken out of the crib; that the crib was not measured, neither was the wagon body, and that he accounted with and paid Simon Long for the same corn at the price per bushel agreed upon between them at the time of the sale, and paid him $382.02.

Whereupon the plaintiff, being recalled to the stand, testified that Simon Long came to see her first, before the November Term of Court, 1863, and proposed to buy her crop of corn at seventy cents per bushel; that she told him she could not sell it, she would have to see Mr. Shafer first; that she insisted that the contract should be in writing, and told him she would reserve two hundred bushels; saw Shafer and told him that she had agreed to sell to Simon Long her crop of corn, except two hundred bushels, subject to his approval, and that she insisted with Shafer that the contract should be in writing, and that Benjamin Long was to have nothing to do with it; that she told Shafer the corn was to be measured by the crib or wagon load; never understood the contract as closed between herself and Simon Long, and that she never made sale of it; and further testified that the terms of the contract proposed and agreed upon by her and Simon Long were, that Simon Long was to pay her seventy cents per bushel for the crop, she reserving two hundred bushels thereof, and that Benjamin Long was to have nothing to do with it; that the corn was to be measured by the crib or wagon body, and afterwards to be at the risk of Simon, and the terms of the contract were to be reduced to writing.

Whereupon the defendants recalled Alexander Shafer,

and proved by him that he had no recollection of the plaintiff's insisting to him that the contract should be in writing; neither did she make any reservation of two hundred bushels of her crop, and that he did not remember that the plaintiff, in the conversation respecting the sale of her crop, with him, said anything about Benjamin Long's having nothing to do with the sale of the corn, but that on other occasions the plaintiff had complained of him, but witness did not remember what it was.

Upon all the evidence, the plaintiff prayed the Court to instruct the jury as follows:

1. If the jury shall find from the evidence in the cause, that the corn mentioned in the declaration was sold by the plaintiff to Simon Long, one of the defendants, and that it was to be measured in and by the crib or by the wagon body, on the land and premises of the plaintiff, and that after said contract was made for said corn, the plaintiff notified said Simon Long that he should not remove or take it away, and that after such notice, the said Simon Long sold the said corn to Benjamin Long and the other defendant, and that at the time of said last mentioned sale, the said Simon Long informed the said Benjamin Long of the fact that such notice had been given him by the plaintiff, not to take away or remove said corn, and that afterwards, the said Benjamin Long, together with others, who were acting for him and at his request, entered upon the farm mentioned in the declaration, then in the possession of the plaintiff, and without the consent of the plaintiff, and after the refusal by the plaintiff of the key to said corn crib, broke and entered the corn crib of the plaintiff, then and there being, and took therefrom the corn then found therein, without measuring the same in and by the crib or by the wagon body, and carried the same away, then the defendant's plea of leave and license pleaded in this cause is not sustained,

and the said Benjamin Long is liable for trespass, in entering upon the land and premises of the plaintiff, and breaking open the corn crib and taking the corn therefrom as aforesaid.

2. That if the jury find the facts stated in the aforegoing prayer, and that the said Simon Long, after the taking away the corn from the said crib, and with knowledge of the manner of such taking, received an account from said Benjamin Long of the quantity of said corn, and settled therefor with the said Benjamin, then the said Simon Long is liable as a trespasser for the entry upon the said land and premises, and the taking away of the corn as aforesaid.

3. That if the jury find the facts stated in the first of the aforegoing prayers, then the written agreement dated the — day of January, 1864, and given in evidence by the defendants, is not sufficient evidence of an accord and satisfaction, as to the entry upon the land and premises of the plaintiff, and the breaking and forcible entry into said corn crib on said lands.

The defendants then prayed the Court to instruct the jury as follows :

1. If the jury shall find from the evidence in this cause, that the plaintiff, before the commission of the trespass complained of in the declaration, had sold the corn mentioned therein to Simon Long, one of the defendants in this case, and that after the committing of the trespass mentioned, (if they so find,) the plaintiff was satisfied or paid the full value of the said corn, according to the price agreed upon in the contract of sale, or was allowed the full value of the said corn in a settlement between the plaintiff and defendant Simon Long, then the plaintiff cannot recover in this action, the value of such corn, even though the jury find that the defendants entered the close of the plaintiff and took and carried away the said corn.

2. If the jury find from the evidence in this cause, that the plaintiff, in October, 1863, was the owner of a crop of corn and of the close mentioned in the declaration, and was at the same time indebted unto Simon Long, one of the defendants, and a certain Alexander Shafer, and that to secure the payment of such indebtedness, the plaintiff executed to the said Long and Shafer, a mortgage upon the said crop of corn, and other personal property, and shall also find that afterwards, but before the committing of the wrongs complained of in her declaration, the plaintiff sold the said crop of corn to the defendant Long, and that it was agreed between them, that the plaintiff should deliver the said crop for the said Long by cribbing the same upon the said close for him, or placing it in a crib thereon for the said Long, and that in consideration thereof, the said Long agreed to allow a certain price per bushel for the said corn, and that the value of the whole crop so to be delivered, should be and stand as a credit upon the said mortgage debt, and if the jury shall further find, that pursuant to said contract the plaintiff did deliver the said crop at her said crib, or that she cribbed the same upon the aforesaid close, and shall also find that the said Long did credit upon the said mortgage debt, the full value of the said corn at the price agreed upon per bushel, and that the same was accepted by the plaintiff, then the defendant Simon Long and those claiming under him, were entitled to enter upon the plaintiff's close for the purpose of taking and carrying away the said corn, and if the jury find that the entry and breaking complained of in the plaintiff's declaration, was made with that intent, the plaintiff cannot recover for such entry or for taking away the corn.

3. If the jury find, that the plaintiff was indebted as stated in the foregoing prayer, and that she executed the mortgage as therein stated, and that she was, at the time, the owner of a crop of corn, and shall further find, that

the plaintiff sold her said crop of corn to the defendant, Simon Long, and promised and agreed with him, in consideration of his agreeing to allow her a certain sum per bushel, and to place the entire value of such crop at such price as a credit upon or against the said mortgage debt, to deliver the said crop of corn for him in a crib, standing on the said close named in the declaration, and shall further find that the plaintiff also agreed that the said Long should enter upon the said close and take away the said corn from such crib at his pleasure, then it was lawful for the said Long or those claiming under him to enter the said close and take away the said corn, and if the jury find that the defendants did enter the plaintiff's close with that intention, the plaintiff cannot recover.

4. If the jury find that the plaintiff was the owner of a crop of corn in 1863, and that she was indebted as mentioned in the second prayer, and that she executed the mortgage therein mentioned for the purposes therein specified, and shall further find that the said Simon Long in consideration that the plaintiff would deliver to him or for him, her said crop of corn into a crib standing on the close mentioned in the declaration, and allow him to enter the said close at any time and take the said corn from such crib, promised and agreed with the plaintiff that he would pay her the sum of seventy cents per bushel for it and credit the full value of the said crop at the aforesaid price, upon and against her indebtedness upon such mortgage debt; and if the jury further find that afterwards the plaintiff did deliver her said crop as aforesaid, then the said Simon or those claiming under him were entitled to enter the said close for the purpose of taking away the said corn, and if the jury find that the said Simon afterwards, and whilst the corn was in the said crib, sold the same to the defendant Benjamin Long, or to the said Benjamin and the defendant Hamilton Downs, and that they entered upon the close of the

Long *vs.* Buchanan.

plaintiff for the purpose of taking away the said corn, the plaintiff cannot recover.

The Court granted the prayers of the plaintiff and the first prayer of the defendants, but rejected the other prayers of the defendants; to the granting of the plaintiff's prayers and the rejecting of those of the defendants they excepted, and the verdict and judgment being against the defendant Benjamin Long alone, he appealed.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Andrew K. Syester,* for the appellant:

There is no question here relative to the taking and carrying away of the corn, or of its value. The only question arises as to the right to enter the close for the purpose of taking away the corn. Whether having once given a license to Simon to enter and take, that license *being thus coupled with an interest, was revocable?* That a mere naked license to enter one's close is revocable, just as an authority to do any other thing, not resting on a valuable consideration, is revocable at pleasure, it is no part of this argument to deny. But an authority to do an act or a "license" for an action, *coupled with an interest, is not revocable.* Indeed such contracts are something more than mere licenses. In this case the contract between Simon Long and the appellee, was a contract of sale and delivery of corn to him, with the right to him, as part of that contract, to enter upon the close and take away the corn. But for this right, the contract would never have been made. It is not possible to contend but that this very privilege was the controlling element in, and the material inducement to, the contract. And it is impossible to conceive how the appellee could be allowed by the Court to repudiate, at her mere pleasure, one part of this contract, and that part the very element in it

which made it at all valuable to the vendee, and at the same time enjoy the benefit of all other parts. She had no more power to repudiate this part of her contract than she had to repudiate the entire contract. Here the license is part of the very contract. The corn had actually *been delivered.* The permission to enter, &c., was merely incident to the right to the property. It was *the express means* by which the thing sold and delivered, should be used and enjoyed by the purchaser. The sale was *completed,* and this, (the entry,) was the mode distinctly agreed upon, by which the vendee should exercise his right over his property. A license thus given is irrevocable. *Wood vs. Manley,* 11 *Adol. & Ellis,* 34, (39 *Eng. Com. Law,* 19;) *Wood vs. Leadbitter,* 13 *M. & W.,* 837.

The delivery of the corn into the crib, worked a change in the ownership so far as to constitute the corn the property of the purchaser; and even without an express agreement, the purchaser might lawfully enter to take it. If one place my property on his own premises, I may lawfully enter and take it. *Patrick vs. Colerick,* 3 *M. & W.;* 482.

Breaking the lock, &c., is not such violence as to amount to a breach of the peace, and even conceding that a party by violence may subject himself to a criminal procedure, he thereby by no means renders himself a trespasser, so as to be answerable to an action at the suit of a private person. *Hyatt vs. Wood,* 4 *Johns. Rep.,* 159.

The foregoing authorities are believed to be conclusive of the question as to the right to enter, &c., between the appellee and her immediate vendee, Simon Long. As against Simon the license was irrevocable; his right to enter, &c., is beyond dispute. Is this right qualified or impaired in the person of *his* vendee or assignee? That a *mere license* is personal, in its nature, and not assignable, is conceded; but I contend and insist, that *here there is something more than a mere license.* In the case of

*Wood vs. Leadbitter*, 13 *M. & W.*, 844, Alderson says:
"But that which is called a license is often something
more than a license ; it is often connected with a grant,
and then the party, who has given it, cannot in general
revoke it *so as to defeat his grant to which it was incident.*"
And in the case of *Moats vs. Witmer*, 3 *G. & J.*, 118, the
Court at 121st page, speaks of the right of Moats the
assignee of Funk, in a case almost similar to this, to
enter upon Witmer's land, "conformably to the agree-
ment between Funk and Witmer," without being at all
embarrassed by any such difficulties as I am endeavoring
to combat. Indeed, when the contract is once ascer-
tained to be *something more than a mere license*, none of
the qualifications or limitations attending that legal idea
can be interposed, to control or modify the right of par-
ties. The rights of the assignee must be determined
from a different standpoint. The appellant bought all
that Simon had acquired, bought with "knowledge of all
the facts," and in contemplation of law, with knowledge
of the fact that the appellee had denuded herself irrevo-
cably of her right, in any manner, to restrict or qualify
the right of entry, when made conformably to the agree-
ment between her and Simon. To allow the appellee to
repudiate this part of her contract, would be as absurd,
as against the appellant, as it would have been to allow
it as against her own immediate assignee.

For the reasons set out under the first point the grant-
ing of the appellee's second prayer is erroneous. By that
prayer Simon is made a trespasser, notwithstanding as to
him the license was clearly irrevocable. And in face of
the fact, that the parties went there, not by his command
as his employees, but as his assignees or vendees. The
doctrine declared in that prayer is, that a party pur-
chasing as Simon Long did, can neither enter himself on
the close (although that is distinctly granted him in the
agreement) and take away the purchased article ; nor can

he sell it, except at a ruinous discount, in view of the certainty of a law suit on the shoulders of his vendee, made necessary to enjoy the articles purchased.

*W. Motter*, for the appellee.

If it be the first prayer of the plaintiff to which the exception applies, then it is insisted that said prayer is correct, and there was no error committed in the granting the same. But it is insisted, that this Court cannot assume that it is the first rather than the second or third of the plaintiff's prayers, that is contemplated by this exception. The first prayer is correct. 4 *Kent's Com.*, top, 558, *side*, 452, 453, *and note; Wallis vs. Harrison*, 4 *M. & W.*, 538; *Wood vs. Leadbitter*, 13 *M. & W.*, 838; *Heermance vs. Vernoy*, 6 *John. Rep.*, 5; *Roach vs. Damron*, 2 *Hump.*, 425.

The second prayer of the plaintiff cannot be brought into question here, because it only concerned Simon Long, one of the defendants for whom the verdict was found; and upon the third there seems to be no question made by the appellant, as clearly there could not be, with any expectation of success.

The second, third and fourth prayers of the defendants were properly refused by the Court below:

1st. Because they each required the Court to instruct the jury, that the plaintiff *could not recover* upon a certain hypothesis, which only embraced a part of the testimony, and was therefore calculated to mislead the jury.

2dly. Because, if the contract were made as contended by the defendants, the license given for the taking away the corn was of a personal character, *and was not assignable*, and therefore the appellant was a trespasser in entering the premises and breaking the corn crib of the plaintiff, and taking away the corn, against her known consent; and especially as it was done without the measurement of the corn, that was agreed upon by the parties. 4 *Kent's*

*Com.*, 557, *top, and* 452, 453, *side; The King vs. Newton, Bridg.*, 115; *Howes vs. Ball*, 7 *Barn. & Cres.*, 481; *Prince vs. Case*, 10 *Conn. Rep.*, 375.

3dly. Because the license was at any rate of a *revocable character,* and having been revoked to the knowledge of the appellant, he was not justified in entering the plaintiff's close, and there, by force and violence, breaking open the corn crib, and taking away the corn without measuring the same in the manner agreed on. If he had legal rights that were in any manner obstructed by the appellee, he should have resorted to his proper legal remedy, and not by force and violence, undertaken the work of enforcing rights claimed by him, but disputed by the appellee. This the law will not tolerate. 4 *Kent's Com., top,* 558, *side,* 452, 453, *and note; Beidelman vs. Foulk,* 5 *Watts,* 308; *Couch vs. Barke,* 2 *Hill's S. C. Rep.,* 534; *Hall vs. Chaffee,* 13 *Verm. Rep.,* 150; *Wallis vs. Harrison,* 4 *M. & W.,* 538; *Wood vs. Leadbitter,* 13 *M. & W.,* 838; *Heermance vs. Vernoy,* 6 *John. Rep.,* 5; *Roach vs. Damron,* 2 *Hump. Rep.,* 425; *Parker vs. Staniland,* 11 *East.,* 362; *Williams vs. Morriss,* 8 *M. & Wels.,* 488; *Gale & Whatley's Law of Easements,* 40–42.

WEISEL, J. delivered the opinion of this Court.

The appeal in this case is by one of three co-defendants in an action of trespass *quare clausum fregit,* the verdict and judgment being against him alone. The only exception in the case is to the granting by the Court below of the plaintiff's prayers, and the refusal to grant the second, third and fourth prayers of the defendants. The first and third prayers of the plaintiff, in our judgment, were correctly granted. The second need not be passed upon, as Simon Long was not affected by the verdict and judgment. The principal defence was the leave and license pleaded in the second plea. The three prayers of the defendants, refused by the Court below, present this to our considera-

tion ; and it is contended that the evidence adduced by the defendants and relied upon to support them, not only proved the license, but disclosed the fact that it was coupled with an interest that rendered it irrevocable ; and if so, the prayers contained correct propositions of law, and should have been granted by the Court. It appears by the defendants' proof that the plaintiff had agreed with the defendant, Simon Long, not simply to sell him the corn, but to put it in her crib for him, for measurement, from which he was privileged to take it ; that the corn was to be settled for by a credit upon a mortgage he held against her, and a receipt so given, and that a larger price was paid for it than the then current prices in the market; that the corn was placed in the crib and the said Simon invited to go for it or had notice to take it away at his pleasure. This state of facts, if proved to the satisfaction of the jury, would constitute a license coupled with an interest or grant which rendered it irrevocable.

Care must be taken not to confound this case with those of a class, in which the license, though coupled with an interest, is nevertheless of a revocable nature, and would furnish no justification to the licensee for acts done after revocation. These are cases where the interest partakes of the realty, or is of such a nature as to require for its validity a deed, or a compliance with the Statute of Frauds, as an easement, right of way, or other interest in, upon, or out of the land itself. Of this class is the case of *Wood vs. Leadbitter*, 13 *Mees. & W.*, 838, cited by the counsel on both sides in the argument. It was very fully considered by the Court of Exchequer, and all the English cases ably reviewed by Baron Alderson in the opinion delivered in it. The note to the case in *Hare and Wallace's Edition*, points to the leading American decisions, to which we may add the cases of *Hays vs. Richardson*, 1 *Gill & J.*, 366, and *Addison vs. Hack*, 2 *Gill*, 221, as bearing upon the question. From these we

Long *vs.* Buchanan.

deduce these principles, that a license, according to *C. J. Vaughan*, "properly passeth no interest, nor alters or transfers property in any thing, but only makes an action lawful which without it had been unlawful;" as a license to hunt in a man's park or to come into his house. But a license to hunt in a man's park and carry away the deer killed to his own use, or to cut down a tree and carry it away the next day, is something more than a mere license; so far as the taking away of the deer killed or the tree cut down, it is a grant. A mere license is revocable. But where it is connected with a grant, the party who has given it cannot in general revoke it, so as to defeat the grant to which it was an incident. In all cases of a license by parol where the grant is of a nature capable of being made by *parol*, the license is irrevocable. But where the license by parol is coupled with a *parol grant* of something which is incapable of being granted otherwise than by deed or by compliance with a statutory requirement, there the license is a mere license, because the grant annexed to it wants legal validity; and like all mere licenses, it is revocable. These distinctions are clearly illustrated in the following extract from the opinion referred to. "Thus, a license by A. to hunt in his park, whether given by deed or by parol, is revocable; it merely renders the act of hunting lawful, which, without the license, would have been unlawful. If the license be, as put by Chief Justice Vaughan, a license not only to hunt, but also to take away the deer when killed to his own use, this is in truth a grant of the deer, with a license annexed to come on the land: and supposing the grant of the deer to be good, then the license would be irrevocable by the party who had given it; he would be estopped from defeating his own grant, or act in the nature of a grant. But suppose the case of a parol license to come on my lands, and there to make a water course, to flow on the land of the licensee. In such a

case there is no valid grant of the water course, and the license remains a mere license, and therefore capable of being revoked. On the other hand, if such a license were granted by deed, then the question would be on the construction of the deed, whether it amounted to a grant of the water course ; and if it did, then the license would be irrevocable." *Wood vs. Leadbitter*, 13 *M. & W.*, 845.

The case of *Wood vs. Manley*, 11 *Ad. & Ellis*, 34, cited and relied on by the appellant, is one coupled with an interest, grantable by parol, and irrevocable. The hay in question had been sold by the plaintiff's landlord under a distress for rent, and the conditions of the sale were that the purchaser might leave it on the close until Lady Day, and come in the meantime on to the close, and from time to time as often as he should see fit, and remove it. *To these conditions the plaintiff assented*, but, before the day, locked up the close to prevent the ingress of the purchaser and the removal of the hay. The defendant, the purchaser, broke open the gate and carried away the hay. He obtained the verdict under the instructions of Erskine, Justice, on the ground that the license was irrevocable. On a motion to set aside the verdict, on the ground that the license was revocable and revoked, the Court of Queen's Bench refused to grant a rule ; and Baron Alderson adds, (p. 853,) " we think, quite rightly. This was a case not of a mere license, but of a license coupled with an interest. The hay, by the sale, became the property of the defendant, and the license to remove it became, as in the case of the tree and the deer, put by *C. J. Vaughan*, irrevocable by the plaintiff, and the rule was properly refused. The case was analogous to that of a man taking my goods, and putting them on his land, in which case I am justified in going on the land and removing them. *Vin. Abr. Trespass (H)* a 2, *pl.* 12 ; and *Patrick vs. Colerick*, 3 *M. & W.*, 483."

Long *vs.* Buchanan.

See also 1 *Cowen*, 568, *ex parte Coburn;* and 6 *Verm.*, 388, *Eli Barnes vs. Lewis Barnes.*

In the case of *Moats vs. Witmer*, 3 *Gill & J.*, 118, the plaintiff recovered because the defendant entered and carried off both grain and straw from the premises, when he was entitled only to enter and thrash the grain there, carry off the grain and leave the straw. If he entered with the intent (to be found by the jury,) to carry away the grain in the straw and thrash it off the premises, his right of ingress and egress no longer protected him, and he stood in the predicament of any other trespasser. We think the case under consideration cannot be distinguished from that of *Wood vs. Manley*, followed in its principles by the other cases referred to, if the facts relied upon by the defendants as to the character of the license were found by the jury, and that the same law is applicable to it. The prayers of the defendants, that were refused by the Court below, presented this hypothesis of the case, and it was not necessary that they should refer to the facts, relied upon by the plaintiff, to prove a revocation of the license, for, notwithstanding them, (the license upon the defendant's hypothesis being irrevocable,) the plaintiff would not be entitled to recover, if the others stated were found to exist. Nor is there anything in them to conflict with the first prayer of the plaintiff. These prayers ought therefore to have been granted, and we must reverse the judgment.

*Judgment reversed, with*
*leave to the plaintiff to take*
*out a procedendo.*

(Decided 19th July, 1867.)