# ROY C. DAWSON et al. *vs.* THE WESTERN MARYLAND RAILROAD COMPANY.

*Covenant in Deed not Running with the Land—Performance of Future Act as Consideration in Deed—Rights of Assignees of Grantor—Condition in Deed of Land to a Canal Company Providing for Construction of a Basin—Ultra Vires Contract.*

The grantee in a deed, signed and sealed by the grantor only, does not, by accepting it, become bound on the covenants therein contained as a covenantor.

When a deed by which land is conveyed to a canal company provides, as part of the consideration and as a condition, that the canal company

shall thereafter construct a basin on the land conveyed but the company as grantee does not execute the deed, and it does not state that the condition is for the benefit of the assigns of the grantor, such stipulation is not a covenant running with the land.

When part of the consideration upon which land is conveyed is that the grantee shall erect a certain structure upon it, but that is not expressed to be for the benefit of the land retained by the grantor, and there is no covenant that the conditon shall enure to the benefit of the assigns of the land retained by the grantor, then such an assignee is not entitled to enforce performance of the condition by the grantee or his assigns, or to complain that the original grantor did not receive the consideration for which the deed was made.

A contract by a canal company to construct a basin on part of the land purchased by it as a part of the consideration is not *ultra vires.*

The deed by which certain land was conveyed to a canal company stated that it was made in part on the consideration and condition that the caaal company should construct a basin connected with its canal within the limits of the land conveyed. The canal company did not execute the deed or make any express covenant, and there was in it no reference to the heirs or assigns of the grantor. The deed did not reserve any right to the grantor to use the basin. The basin was constructed and used by the grantor in connection with a mill erected on his land. Seventy years afterwards, the land of the canal company was conveyed to the defendant Railroad Company, which filled in the basin. On a bill by the owner of the mill and land of the original grantor, who had become such by mesne conveyances, asking that the defendant company be decreed to restore the basin and maintain the same, and that it to be enjoined from obstructing the use of the basin by the plaintiff. *Held*, that although there was no express covenant by the canal company to maintain the basin yet having accepted the deed under that condition, it was bound to the grantor to maintain the same, and that the Railroad Company as assignee would likewise be bound to the grantor in the deed.

*Held*, further, that the deed made no reservation or condition as to the construction of the basin in behalf of the assignee of the grantor, and that the plaintiff as assignee is not entitled to enforce against the defendant the rights which the original grantor had.

*Held*, further, that if the deed be treated as attempting to create an easement in the land conveyed in favor of the grantor, it is ineffectual, because not executed and acknowledged by the creator of the easement; and that if the provision in this deed be treated as a condition it was a condition subsequent, and as such could not be taken advantage of by the plaintiff as assignee.

*Decided December 3rd, 1907.*

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was argued before BRISCOE, BOYD, SCHMUCKER, BURKE and ROGERS, JJ.

*Chas. D. Wagaman* (with whom were *J. Clarence Lane, Norman B. Scott, Jr.*, and *Forrest W. Brown* on the brief), for the appellant.

A party to an indenture made and executed by another to him, will become covenantor and liable as such, though he may not sign and seal the deed, if he is named in it and accepts it and it contains covenants, which by the terms of the deed, he is to perform. *Martindale on Conveyancing*, 68; *Finley* v. *Simpson*, 22 N. J. L. 311; 2 *Elliott on Railroads*, sec. 416; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; *Whitting Mfg. Co.* v. *Staples*, 41 N. E. Rep. 445; *Haggerty* v. *Lee*, 54 N. J. L. 580; *Haggerty* v. *Lee*, 50 N. J. Eq. 464; *Woodruff* v. *Woodruff*, 44 N. J. Eq. 349; 1 L. R. A. 380 and note.

A covenant or stipulation inserted in a deed poll binds the grantee, his heirs and assigns, where such stipulation relates to the premises conveyed. The easement in such case may be acquired by a clause of reservation. *Haggerty* v. *Lee*, 54 N. J. L. 580; 20 L. R. A. 637.

The grantee in a deed and those claiming under him, cannot deny binding authority of a reservation in a deed. *Shepperd* v. *Hunt*, 4 N. J. Eq. 277; *Fitzgerald* v. *Faunch*, 46 N. J. L. 598; *Haggerty* v. *Lee*, 20 L. R. A., p. 631; *Whitney* v. *Union Railway Company*, 11 Gray, 359.

The gist of the first eight grounds of objection assigned in the demurrer is that covenant in the Rowland deed does not run with the land so as to bind the assigns. The appellants do not contend that the covenant is of a character to run with the land in the strict legal technical sense. Covenants do not run with the land in equity. "The equitable doctrine is that a person who takes with notice of a covenant is bound by it." *Rogers* v. *Hosegood*, 7 Am. & Eng. Dec. in Eq. 212; *Newbold* v. *Peabody Heights Co.*, 70 Md. 500.

The covenant to construct and establish a basin on the land conveyed "touched and concerned" the land demised, and the basin being the subject matter of the covenant, the covenant is therefore capable of running with the land. The deed states that the conveyance is made *in consideration and upon condition that the Canal Company shall, within the limits of the land conveyed, make, construct and establish a basin connected with the canal,* etc.

The quality, value and mode of enjoying the land conveyed are all affected by this language, and when such a condition is annexed or appurtenant to it, it is capable of running with the land at law if there be also privity of estate. *Glenn* v. *Canby,* 24 Md. 127.

But it is objected by the demurrer that there was no privity of the estate. By privity of estate in case of this nature is meant that there must pass between the covenantor and the covenantee, at or about the time of the covenant, land or some interest in land. *Conduit* v. *Ross,* 102 Ind. 166; *Ry. Co.* v. *O'Haugh,* 5 S. W. R. 711; *Branson* v. *Coffin,* 108 Mass. 180.

Except for lack of technical accuracy in the language creating the covenant in the deed in question in this case, we respectfully submit it has all the elements or requirements of a covenant running with the land at law. In equity, however, this technical accuracy is not required, but the Courts look to the intention of the parties and if any attempt is made by the grantee or its assignee to use or apply the land in a manner and to a purpose different from that intended, a Court of equity would restrain such improper use and appropriation. *Lynn* v. *Mt. Savage Iron Co.,* 34 Md. 638.

In this case, after stating the above principle, the late CHIEF JUSTICE ALVEY says: "In such case the question would be, not whether the covenant ran with the land, but whether the party should be allowed to use and appropriate the land in a manner wholly at variance with the contract entered into by its assignor and with notice of which it purchased."

Applying this principle to the case now before the Court, we find that the grantors in the deed contracted and agreed to

sell to the Canal Company such portion or quantity of the whole tract of land owned by the grantors as may be covered, used, occupied or required by the said canal or any of its necessary works or appendages ; and the deed then states that in order to carry into full effect the said contract and agreement "the grantors are willing to execute the same, and in consideration of the premises and in consideration also and upon condition that the Canal Company shall, within the limits of the land hereinafter conveyed, make, construct and establish a basin connected with said canal, and also a roadway under the canal to the Potomac River, and also in consideration of the benefit which will result to them, "the grantors as owners of said land (the whole tract owned by the grantors) by cutting the said canal through and erecting the said work (the basin and roadway) upon said land and also in consideration of the sum of one dollar, the said grantors have granted, etc.

We further find that the Canal Company entered upon the land thus conveyed and used it in the manner stipulated, but the defendant as assignee of the Canal Company, having purchased with notice of the aforesaid contract, have destroyed the basin and are using the land for a purpose wholly at variance with the contract entered into by the Canal Company.

In *Newbold* v. *Peabody Heights Co.*, 70 Md. 493, 502, CHIEF JUSTICE ALVEY says: "The English and American Courts all concur in holding that whoever purchases land upon which a former vendor or lessor has imposed an easement, charge or restriction in the manner of its use, such as would be enforced by a Court of equity as against his vendee or lessee, the party purchasing the land, with notice, will take it subject to such easement, charge or restriction, however created." *Parker* v. *Nightingale*, 6 Allen, 341; *Whitney* v. *Union Railway*, 11 Gray, 359; *Condert* v. *Sayre*, 46 N. J. Eq. 386; *Kirkpatrick* v. *Peshin*, 24 N. J. Eq. 206; *Tellmadge* v. *East River Bank*, 26 N. Y. 108; *Trustees* v. *Lynch,* 70 N. Y. 448; *Peck* v. *Conway*, 119 Mass. 546; 3 *Wash. on Real Prop.*, 6 ed., sec. 1241; *Wash. on Easements*, 3 ed., 97 to 106.

Accordingly the general rule in equity is, that a covenant

or restriction which the parties intend to be binding upon or annexed to one tenement or appurtenant to another, is enforceable against the owners of the former by the owners of the latter, whether they be the original parties or their successors in title, and irrespective of the question whether or not it runs with the land; and the only test by which to determine whether or not a restriction is intended to operate thus, is the intention of the parties, to ascertain which, resort must be had to the words of the covenant or restriction, read in the light of the surroundings of the parties, and the subject of the grant; and whenever it appears clearly from such an inquiry that it was the intention of the parties that the estate should be burdened with the covenant or restriction, into whosoever hands it might come, or that it should be appurtenant to another estate, it will be construed as if it did in fact run with the land and will be enforced against all subsequent purchasers with notice, either actual or constructive. *Pom. Eq. Jur.*, sec. 689, n. 5; sec. 1295, n. 1, p. 313; sec. 1342; *Peck* v. *Conway*, 119 Mass. 546; *Masury* v. *Southworth et al.*, 9 Ohio St. 352.

The fact that the real consideration of the grant was the reservation of the right to have a part of the land granted devoted to the uses agreed upon points clearly to the conclusion that the reservation or right touched or concerned and affected the value of the land granted and the land retained by the grantors as owners and was not a reservation for their personal benefit. 2 *Wash. on Real Prop.*, 298; *Whittenton Mfg. Co.* v. *Staples*, 41 N. E. Rep. 442; *Stines* v. *Dorman*, 25 Ohio St. 582; *Am. Strawboard Co.* v. *Haldeman Paper Co.*, 83 Fed. Rep. 624.

That a covenant by a railroad company to erect certain improvements on land conveyed to it does not name its successors and assigns will not prevent its running with the land granted so as to charge the purchaser thereof; the law at the time providing for no sale by the company of its property and franchises and the probability of there ever being successors and assigns therefore not being contemplated by the parties. *Dorsey* v. *St. Louis, A. & T. H. Ry. Co.*, 58 Ill. 65.

In the construction of the deed in this case effect must be given to the words *"owners of said land."* These words are certainly descriptive of a class, that is, all persons who became owners of the land in question, and should not be confined in their application to Jonathan and Kelly alone. They happened to be, at the time, the persons who were to be benefited as owners, but it is manifest from all the surrounding circumstances (and particularly because it was the consideration in the deed) that a work of an enduring nature was to be constructed by the Canal Company which would enure to the benefit of all who came after them as owners of the land. A perusal of the deed, together with a knowledge of the facts and circumstances leading up to its execution, shows beyond question that the plaintiff's contention in this respect is the correct one, and the words "owners of said land" as used in this deed have the same significance as the word assigns. *Masury* v. *Southworth*, 9 Ohio St. 352.

In arriving at the intention of the parties we are further aided by the manner in which for seventy years the respective parties used the land mentioned. During all that time the Canal Company understood and recognized by their user of the property the very rights which the plaintiffs and those under whom they claim have always exercised and are now claiming in this case. *Price* v. *Lawson*, 74 Md. 508; *Lynn* v. *Mt. Savage Iron Co.*, 34 Md. 630.

In reply to the contention of the defendant that contract on the part of the Canal Company to construct a basin as set forth in the deed is *ultra vires*, we submit that under the decision of this Court in the case of the *W. M. R. R. Co.* v. *The Blue Ridge Co.*, 102 Md. 307, the Canal Co. had the right to enter into such contract.

*William Kealhofer* and *Benjamin A. Richmond*, for the appellee.

The appellants are strangers to both Jonathan Rowland and the Canal Company. They are in no sense parties or privies in the Rowland deed. The deed is 70 years old and the only

way, therefore, appellants can claim to have any interest in
the lands conveyed by the Rowland deed or in the covenants
therein must be either, (*a*) on the ground that this covenant
implied against the Canal Company was a covenant for the
benefit of the adjoining land of Rowland and was a covenant run-
ning with that land, whereby it ran down into the hands of the
present appellants owning said adjoining land; or (*b*) that said
covenant in the Rowland deed created an easement in the
granted land for the benefit of the adjoining land which passed
down by mesne conveyances to appellants as appurtenant to
their land as the dominant estate.

All this is obviously so and by keeping it constantly in view
it will be found that this position of affairs is a complete an-
swer to a large number of the cases which were cited by ap-
pellants in the Court below and which will no doubt be relied
on in this Court on the subject of easement.   Many of the
cases relied on by them were cases between one or more of
the original parties or their assignees with notice.   Such is the
case cited by appellants in the latter part of the opinion in
*Lynn* v. *Mt. Savage Iron Co.*, 34 Md. 638.   Here the appel-
lants are total strangers to the whole transaction unless they
can bring themselves in as owners of a covenant running with
their land or the owners of an easement created years before
on the granted land for the benefit of the lands they now own.

But what after all, is the extent of this covenant?   It pro-
vides that the Canal Company shall within the limits of the
land conveyed construct and establish a basin connected with
said canal and also a roadway and road culvert, etc.   We need
not discuss the roadway and road culvert as no claim is made
for them and they are not in the case.   So far then, we have
it that the Canal Company agreed to construct a basin in the
lands conveyed.   The deed does not say that this basin is to
be constructed for the benefit of the remaining lands of said
Rowland and it does not intimate in what way if any such a
basin would be of any benefit to the adjoining lands of Row-
land.   But the deed further says "and also in consideration of
the benefit which will result to them the said Jonathan and

Kelly as owners of said land by cutting the said canal through and erecting the said work upon the said land" and it is thought that these words intend some special benefit for Kelly and Thomas different from the benefit that would accrue to anybody else by the building of the canal.

Doubtless the building of the Chesapeake and Ohio Canal was an important event in those days and no doubt Rowland and Thomas thought the building of the canal would be a great benefit to everybody along there, but nowhere in said covenants, in either or both of them is there the slightest suggestion of any particular or peculiar benefit which will result to Rowland and Thomas from the building of this canal different from that, which would accrue to any other person owning lands along the canal. There is not a hint in the covenant that a warehouse was to be built there, or that a mill was to be built there, or that Rowland should have the right to use the basin as a highway leading from his land to the canal, or that he should have the right to use it as a water way, or as a means of approach to a mill or warehouse for the transporting of freight thereon, or that Rowland might use the basin as a source of water supply for a mill and warehouse, or as a right of ingress and egress to the Cheseapeake and Ohio Canal for the purpose of conveying fuel and merchandise into the mill, or other property of said Rowland. None of these things is either specified or in the slightest way intimated in the said covenant. These things complained of in the bill have all been superadded to the covenant. This appellants have no right to do. It would be a monstrous proposition that merely from the fact that the Canal Company seventy years ago agreed to build a basin in some land conveyed to it and agreed, if you please, that the basin was for the benefit of the owners of the adjoining land, to conclude from that, that the Canal Company had thereby bound itself to permit said basin and its canal and the waters thereof, to be thereafter used for anything and any purpose that subsequent purchasers of the land might devise or desire. If this were so, it could be implied that Rowland could use the basin for a boating

lake, or could draw the water therefrom and thus from the canal, to run a water mill, or to furnish power for all kinds ot machinery, or to irrigate his land.   Under the same implication he could build all sorts of contrivances along his land, bordering on said basin, and make all sorts of use of the water therefrom, or do a dozen other things that might be imagined or conceived of, and for all these things and for all these uses, the Canal Company would be bound under that covenant to maintain not only its basin but the waters in its canal.

The learned Court below says, "A grant is construed most strongly against the grantor.   If it was in contemplation of the parties to said grant that said basin was to be constructed and established by the Canal Company for the special benefit of the grantors in connection with a mill and warehouse on its bank, or for any other special purpose, the uses and benefits to be derived and enjoyed by the grantors from the construction of the said basin, would, it seems to me, have been set forth with some definiteness."

This statement clearly epitomizes the whole situation.   If Rowland intended at the time he made his grant and reserved his covenant, to apply it to any of the uses now contended for, it is inconceivable that the deed would not have provided for them.   Failing to provide for them, no such special benefit can be now claimed as conferred by the covenant.   On the contrary it is fair to conclude that the building of the basin and the benefits to accrue therefrom, were the general benefits of said canal to the people in that neighborhood, and the general benefit that the maintenance of said basin would afford, not only to Rowland but to the people generally, in furnishing access to the canal.

The covenant relied on as one running with the land is a mere implied agreement of the Canal Company to build a basin, a culvert, etc.   It is implied against the Canal Company by reason of its acceptance of the deed.   Of course no more can be claimed from it than if the Canal Company had signed the deed.   Giving the fullest latitude to implication, it amounted to no more than a covenant by the Canal Company with Row-

land and Thomas.   There is not a word in the deed to convey
the idea that the Canal Company covenanted with Rowland
and Thomas and their *assigns*, and there is equally nothing to
imply that the Canal Company covenanted for itself and its
*assigns.*    The most therefore that can be claimed for it is that
it is a covenant in gross between the Canal Company for it-
self alone, and Rowland and Thomas for themselves alone.
Moreover, it was a covenant for something to be done upon
the granted land thereafter, and not a covenant about a thing
*in esse.*    In such a case it is settled law in this State that such
a covenant does not run with the land.   The precise question
was distinctly decided in an elaborate opinion in *Lynn* v.
*Mt. Savage Iron Co.*, 34 Md. 603.   See also *Halle* v. *New-
bold*, 69 Md. 265; *Spencer's case*, 5 Coke, 16; 1 *Smith's
Leading Cases*, 115.

In *Lynn's case, supra*, the Lynns had conveyed to the
Mt. Savage Iron Company certain property lying on the Po-
tomac river in Cumberland, and taken an express covenant
from the Iron Company signed and sealed by it, that it would
erect certain wharves and a railroad on the granted land, and
would thereafter haul all its coal to these wharves and would
have no other wharves in Cumberland.   As this was a cove-
nant with the Lynns and not with their assigns, and was a
covenant to erect certain structures and do certain things on
granted land not *in esse* at the time of the covenant, it was
declared to be a case falling directly within the first resolution
in Spencer's case, and although a case in equity, the covenant
was held to be one which did not run with the land against an
assignee thereof, (The C. & P. Railway Company), even
though the suit in that case was brought by the covenantee
himself.

The case at bar, therefore, is a much stronger case for us
in the application of the rule in Spencer's case than Lynn's
case, for here the suit is by a remote assignee of the covenantee,
seventy years thereafter, and against an assignee of the cove-
nantor.   It is a covenant which "concerns a thing which was
not *in esse* at the time of the demise made but to be newly

built after." It was a covenant (if a covenant at all) that the Canal Company should "thereafter within the limits of the land conveyed, etc., make, construct, and establish a basin connected with said canal and a roadway and road culvert, etc., under the canal." None of these things to be made and constructed, was *in esse* or ever had been *in esse* up to the time of the covenant. They were not improvements usually incident to land, such as fences or houses even, but were contemplated improvements of an unusual and novel character, and if the covenant to build a wall on the granted land as in Spencer's case, and to build wharves and a railroad as in Lynn's case, were covenants in relation to something not *in esse*, then, of course, there is no escape from the contention that the covenant in this case is in the same condition.

The rule in Spencer's case has been adopted in *Brewer* v. *Marshal*, 18 N. J. Eq. 381; *Rose* v. *Thompson*, 8 Cowen, 268; *Hickey* v. *R. R. Co.*, 51 Ohio St. 612; *Smith* v. *Perry*, 26 Vt. 279; *Lametti* v. *Anderson*, 6 Cowen, 302; *Newberg* v. *Weire*, 44 Ohio St. 612; *Hartung* v. *Witt*, 59 Wis. 294. See also *Cyc.*, *Title Covenants*, &c., p. 1084.

In the latter Ohio case, a covenant as to taking away oil was held to be a covenant about a thing not *in esse* at the time of the covenant, and the rule in Spencer's case was approved. The above Wisconsin case is an excellent illustration of what things are regarded by the Court as *in esse*, and what not *in esse*, at the time of the covenant within the rule in Spencer's case. In this Wisconsin case part of the covenant was for repairing an old fence and part of it was for the making of a new fence. Applying the rule in Spencer's case to that part of the covenant pertaining to the repair of the old fence, it was held to run with the land although assignees were not mentioned in the covenant, but the part about building the new fence was held to be a covenant about a thing not *in esse*, and therefore one which did not run with the land against an assignee, no assigns being mentioned in the covenant. All the text writers sustain this doctrine. A full and the clearest discussion of it is set out in *Smith's leading cases, supra*.

See also *Venable's Law on Property in Land,* 58, and 1 *Washburn on Real Property* (3 ed. marg., 330) 552. The only possible ground on which appellants can claim the benefit of this covenant, is on the ground that it is a covenant running with the land. If it does not run with the land they have no interest in the covenant. There is no privity of estate shown between the present appellants and the appellee except by way of this covenant. Rowland and Thomas parted with their whole interest in the land conveyed. They retained no revesion therein. They took a mere covenant to themselves for their own personal benefit and not for their assigns. In such cases the authorities are all one way. Such a covenant does not run with the land. *Howard* v. *Ramsey,* 7 H. & J. 113.

The cases of *Newbold* v. *Peabody Heights Co.,* 70 Md. 500, and *Safe Deposit Co.* v. *Flaherty,* 91 Md. 499, relied on by the appellants do not help them. In Newbold's case the suit was brought by one of the parties to the covenant and it was held that the right claimed under the covenant was of a character to create a right and an equity in favor of the vendor and those claiming in his right as against those holding and occupying the land. It proceeds upon the ground that a proper construction of the covenant showed it was intended to bind assigns though not named. In Flaherty's case, the Court says that there is a class of cases where, although the covenant does not expressly bind the assigns or run in their favor, yet that "in order to carry out the plain intent of the parties it will be construed as creating a right or interest in the nature of an easement to the remaining land of the grantor and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land. * * * But this proposition has been held by high authority to be confined to cases where there is proof of a general plan or scheme for the improvement of property, and its consequent benefit and the covenant had been entered into as part of the general plan to be enacted from all purchasers and to be for the benefit of each purchaser and the party has brought with reference to such general plan or scheme and

the covenant has entered into the consideration of his pur-
chase."

No such contention can be made in this case.    Here there
was no general plan or scheme in contemplation for the benefit
of future purchasers.    It was a mere special arrangement en-
tered into between Rowland and Thomas for their benefit and
the Canal Company for its benefit.    It was not like an addi-
tion laid off to a city where lots are sold with mutually re-
strictive covenants as to building, etc.

The eighth paragraph of the bill of complaint proceeds on
the ground that the implied covenant in the deed created an
easement in and upon the granted. land, which was thereby
made appurtenant to the remaining lands of the grantor, and
being so appurtenant, passed down from the grantor by impli-
cation, in the successive mesne conveyances and proceedings
to the appellants.

We contend that this covenant was merely a covenant in
gross, taken by the grantors for their own personal benefit,
and one that did not attach by any express words in the deed
to the remaining lands of the grantors or their assigns, but
passing that, and conceding that even in a deed poll, an ease-
ment in favor of the grantor can be created by an exception,
or by way of reservation, in favor of and as appurtenant to the
remaining lands of the grantor, could or did the deed between
the parties thereto, situated as they were, have any such effect
in this case?

We insist that no such easement appurtenant to the remain-
ing lands of the grantors was created by the covenants or con-
ditions in the deed for the following reasons:

(a) Because the Chesapeake and Ohio Canal Company had
no power whatever under its charter, to make any such cove-
nant or constitute any such easement, or to undertake to build
a basin and supply it with water from the Potomac river, "as
a highway and .waterway and as a means of approach to the
said mill and warehouse," of the grantors and their assigns as
charged in the bill, or as a source of water supply for said
mill, or to do any other of the things in and about said canal

and basin set out in the bill, all these things being absolutely beyond the power of the Canal Company so to contract to do.

(b) Because an easement in land can only be created in Maryland by a grant or covenant, either express or implied, signed by the covenantor or grantor, sealed and acknowledged. Even therefore, if the Canal Company by accepting the deed could be treated as having signed the covenant, it cannot be claimed that it *sealed* it or pretended that it *acknowledged* it, even by the broadest implication, and no easement therefore, could pass by the covenant under our Acts of Assembly, treating it as a grant by implication.

(c) Because it cannot be contended that the things to be done under the covenant constitute an exception from the grant, but at most could only be treated as a reservation of something to be done thereafter, and in such case, it is well settled that unless words of inheritance are used in the reservation, nothing passes under the covenant to the covenantee beyond his lifetime. His heirs or assigns take nothing by the covenant.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer, and dismissing the bill of complaint filed by the appellants. In 1835 Jonathan Rowland and wife and Kelly Thomas and wife conveyed to the Chesapeake and Ohio Canal Company a tract of land near Hancock, Washington County. The deed recites that, "Whereas the Chesapeake and Ohio Canal is intended to pass through the lands of the said Jonathan Rowland and Kelly Thomas, who have contracted and agreed to sell and convey to the said company such portion or quantity thereof as may be covered, used, occupied or required by the said canal, or any of its necessary works or appendages, and to carry into full effect the said contract and agreement," they were willing to execute the deed. It is then stated that "in consideration of the premises and in consideration also and upon condition that the said Chesapeake and Ohio Canal Company shall within the limits of the land hereinafter conveyed make,

construct and establish a basin connected with the said canal,
and also a roadway and road culvert leading from the turn-
pike road under the canal to the Potomac river, and also in
consideration of the benefit which will result to them the said
Jonathan and Kelly, as owners of said land, by cutting the said
canal through and erecting the said work upon the said land
and also in further consideration of the sum of one dollar," the
grantors granted, etc., the tract of land, which is described by
metes and bounds.

The Circuit Court for Washington County authorized
Messrs. Hugh L. Bond, Jr., and Benjamin A. Richmond, as
special trustees, to make sale of certain properties, rights, etc.,
of the canal company to the appellee, and under that authority
they conveyed to it, by deed dated March 9th, 1905, a portion
of the land mentioned in the Rowland deed, including a part
of the basin which had been constructed by the Canal Com-
pany in pursuance of the provisions in the Rowland deed.
The appellee constructed its railroad over and through the
basin, and this bill was filed by the appellants who claimed by
mesne conveyances the Rowland property, adjoining the basin.
The bill prays (1) for specific performance; that the railroad
company be decreed to restore the basin and maintain the
same as it formerly existed, and (2) that it be enjoined from
hindering, obstructing and interfering with the uses and ben-
efits of the basin by the complainants, as they were enjoyed by
them, and those under whom they claim, from the time of
the construction of the basin, until the filling in of the same,
and for other relief that we need not now mention.

It alleges that the canal company constructed the canal
through the land conveyed by the Rowland deed, and for the
benefit of the land retained by Rowland constructed a basin,
connecting with and opening into the canal, and that Rowland
erected upon the land retained by him, and along the basin, a
large warehouse and mill about the year 1835, and from that
time until the grievances complained of "the said basin was
used by the successive owners of said warehouse and mill, as
an outlet and highway for the shipping and receiving of

merchandise bought and sold in the business conducted at said warehouse and mill; for the transporting of coal and other fuel used in supplying said mill and for such other useful and beneficial purposes incident to the business there carried on." It also alleges that the complainants became the owners of the warehouse and mill property, by virtue of certain conveyances referred to. It does not show what interest Kelly Thomas had in the property, or what became of his interest, but in 1842 the real estate of Jonathan Rowland was sold by a trustee, including what was described as "Lot No. 1, being the warehouse and ground attached to Jacob Snively, for the sum of $875."

The appellee demurred to the bill and assigned a number of reasons therefor. Without stating them in full, the main grounds relied on are (*a*) that the Rowland deed did not contain a covenant which runs with the land, or which created an easement in favor of the adjoining land, which passed as an appurtenance thereto unto the appellants, and (*b*) that the alleged covenant was *ultra vires* of the Canal Company. It may be well to first dispose of some questions about which there can be no serious controversy in this State.

1. The acceptance of a deed poll cannot have the effect in this State of binding a grantee as a *covenantor*. It is said in 8 *Am. & Eng. Ency. of Law*, 65, in speaking of the exceptions made in New York and New Jersey to the general rule, that in order that a provision be binding as a covenant it must be under the seal of the party by whom it is to be performed. "But this exception has been justly criticised as erroneous in principle, and will be found to be unsupported by the authority of any adjudged cases, except those rendered in the States above mentioned which have adopted them. It may safely be stated as the general rule, that mutual covenants cannot arise out of a deed poll." As the Canal Company neither signed nor sealed this deed, there would seem to be no doubt that under the authorities in this State there was no *covenant* by the Canal Company. 1 *Poe*, sec. 144; *Stabler* v. *Cowman*, 7 G. & J. 284; *W. Md. R. R. Co.* v. *Orendorff*, 37 Md. 334; *State, use &c.* v. *Humbird*, 54 Md. 327.

2.   In addition to what we have just said, it is clear there was no covenant running with the land. In *Lynn* v. *Mt. Savage Iron Co.*, 34 Md. 603, this Court adopted the first two resolutions in *Spencer's case*, 5 Coke 16, and the principles there announced are still accepted in this State as correct.   What is spoken of by the appellants as "a covenant" in the Rowland deed referred to things not *in esse*, and there is nothing that could be construed either as a covenant with the grantors *and their assigns*, or by the Canal Company for itself and *its assigns*.   So whatever may be the rights of the appellants, they have no standing in Court on the theory that this is a covenant running with the land, and as the Lynn case, in our judgment, conclusively disposes of that question, we will not further discuss it.

3.   Before passing on what we regard as the most important questions in the case, we will briefly consider the grounds on demurrer which rely on the provision in the deed for a basin being *ultra vires*.   It will be conceded that the appellants have no right to some relief included in the prayers of their bill.   For example, there is nothing in the deed which can be construed to bind the Canal Company to furnish the complainants with water for their mill and warehouse, or other improvements they have on their property adjoining the basin, but in passing on this subject, we must be careful not to confound the right to have the basin, with the method of using it.   We can see no reason why the company could not have bound itself to make a basin along the canal, just as a railroad company can bind itself to erect a depot at a particular place, and there would seem to be no doubt about the latter. See 26 *Am. & Eng. Ency. of Law*, 500; 10 *Ibid*, 1079; 18 *Ibid*, 567.   A basin connected with a canal may be just as necessary and useful for loading and unloading boats, as a station or siding is for a railroad.   Unless the canal be wider at points where boats are to be loaded and unloaded than it ordinarily is, it might obstruct navigation to so use it.   So, although it be conceded that some of the uses of the basin, made by the complainants and those under whom they claim,

cannot be sustained, we are of the opinion that it was not *ultra vires* for the Canal Company to contract or agree to construct a basin on part of the land acquired by it by the Rowland deed, as a part of the consideration of the land purchased.

4.    Having reached the conclusions above announced, are the complainants entitled to any relief sought by this bill?    In passing on that question, we must determine not only whether the railroad company, as assignee of the Canal Company, could have been held to such responsibility to *the grantors* as the Canal Company could have been under the Rowland deed, but also whether the appellants, as present owners of what we will call the warehouse property, are entitled to relief, even if the railroad company would have been liable to the original grantors.    We are of the opinion that the first inquiry must be answered in the affirmative, notwithstanding there was no covenant running with the land, on the principle alluded to in Lynn's case, *supra*.    After saying that the covenants then in question did not run with or adhere to the railroad of the Mt. Savage Iron Co., so as to bind it in the hands of the assignee, the Court said:    "It is true, if any attempt were made by the assignee of the Mt. Savage Iron Company to use and apply the wharves and other improvements on the land of the complainants, in a manner and to a purpose different from that intended, a Court of equity would restrain such improper use and appropriation.    In such case, the question would be, not whether the covenant ran with the land, but whether the party should be allowed to use and appropriate the land in a manner wholly at variance with the contract entered into by its assignor, and with notice of which it purchased.    That is the principle of the case of *Tulk* v. *Moxhay*, 2 Phill. 774; but it is not involved in the present application."

In *Newbold* v. *Peabody Heights Co.*, 70 Md. 501, JUDGE ALVEY quoted at length from *Tulk* v. *Moxhay*.    After announcing the principle which is in substance stated in the Lynn case, LORD CHANCELLOR COTTENHAM went on to say:    "Of

course, the price would be affected by the covenant, and nothing could be more inequitable than that that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken. That the question does not depend upon whether the covenant runs with the land, is evident from this, that if there was a mere agreement and no covenant, this Court would enforce it against a party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." JUDGE ALVEY, after quoting from *Tulk* v. *Moxhay*, added on page 502 of 70 Md.: "The principle thus clearly stated has been applied in a great variety of cases of restrictive covenants and agreements, both in the English and American Courts; and they all concur in holding that whoever purchases land upon which a former vendor or lessor has imposed an easement, charge or restriction in the manner of its use, such as would be enforced by a Court of equity as against his vendee or lessee, the party purchasing the land, with notice will take it subject to such easement, charge or restriction, however created."

Among other cases in this Court reflecting more or less upon the question are *Thurston* v. *Minke*, 32 Md. 487; *Halle* v. *Newbold*, 69 Md. 265; *Peabody Heights Co.* v. *Willson*, 82 Md. 186; *Summers* v. *Beeler*, 90 Md. 474; *Safe Deposit Co.* v. *Flaherty*, 91 Md. 489. In *Thurston* v. *Minke*, this Court quoted with approval from *Whitney* v. *Union R. Co.*, 11 Gray, 359, as follows: "When it appears, by a fair interpretation of the words of the grant, that it was the intent of the parties to create or reserve a right in the nature of a servitude or easement in the property granted, for the benefit of the other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right shall be deemed appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent

grantees of the respective parcels of land." See also 7 *Am. & Eng. Dec. in Eq.*, 253, 254, where the question is discussed and many cases cited; 8 *Am. & Eng. Ency. of Law*, 140, and 11 *Cyc.*, 1078, where many cases are cited, amongst others *DeMattos* v. *Gibson*, 4 DeG. & J. 276, which has been cited with approval by this Court.

Applying these principles to this case, it seems clear that the appellee would not be permitted to purchase the property from the Canal Company and destroy the use of the basin which that company agreed to make, construct and establish, as a part of the consideration to be paid for the property if it had notice, and the grantors were still the owners of the adjoining property. The Rowland deed shows on its face that the grantors had other land which would be benefited "by cutting the said canal through and creating the said work upon the said land," and it was made upon condition that the Canal Company should make the basin within the limits of the land conveyed. The Canal Company did make the basin, which according to the allegations of the bill was maintained and used by Rowland and those claiming under him for seventy years—until the appellee filled it up. The habendum clause of the Rowland deed shows that it was the intention of the parties that the use of the land conveyed was to continue as therein provided for. If the Canal Company could deprive their grantors of the right to use the basin, by conveying it to the appellee in 1905, why could it not have done so by a similar transfer the year after it was constructed? The appellee is making use of it "in a matter wholly at variance" with the condition of the deed under which the Canal Company acquired it.

5. But although we think a Court of equity could undoubtedly give relief to the original grantors, under such circumstances as we have stated, it does not follow that these complainants are entitled to relief. As we have already intimated they cannot require the appellee to restore the basin for some of the purposes set out in the bill. The original grantors did not by the terms of the deed have the right to use the basin

as a source of water supply for the mill and warehouse, and the Canal Company had no power to make such a contract as that so far as we are informed by the record.  Nor does the deed show any right in the grantors to build any part of their warehouse over the basin, as the advertisement of the trustee's sale of the Rowland property shows had been done. The most they could have claimed would have been the use of the basin for loading and unloading boats for shipment on the canal and such uses as were incident to that work.

But the real difficulty is that the grantors conveyed all their right, title, interest and estate in the parcel of land described, and the basin was constructed within the limits of the land so conveyed.  They made no exception to any part of the land described, and did not in terms make any reservation of any part of it.  The deed did not even expressly reserve the right to the grantors to use the basin, or make any provision as to where it should be constructed, excepting "within the limits of the land conveyed," although it may be implied they were to have the use of it—not however the exclusive use—and that it was intended to be so located as to give the grantors the benefit of it.  There is nothing on the face of the deed to require the canal company to construct the basin next to the part of the grantors property, which they still retained.  Perhaps it was then known that the towpath would be on the side of the land towards the river, and that the basin would therefore be on the side nearest to the turnpike, or they may have had some verbal understanding about the location of the basin, but the deed is silent on the subject—beyond what we have stated above.  There is no attempted reservation in favor of *the assigns* of the grantors, and in stating the consideration it is said, "and also in consideration of the benefit which will result to them the said *Jonathan and Kelly*, as owners of said land, by cutting the said land through and erecting the said work upon the said land."

The granting clause shows clearly that there was no exception contained in it, and there is none in any other part of the deed, excepting one not involved in this case.    If there was

anything attempted, excepting to convey the land subject to a condition subsequent, it was a reservation. In *Schaidt* v. *Blaul*, 66 Md. 141 and *Herbert* v. *Pue*, 72 Md. 307, the distinction between a reservation and an exception is pointed out. In both of those cases citations are made from *Sheppard's Touchstone*, page 80, and *Coke upon Littleton*, 47A. As said in the latter, "Note a diversity between an exception (which is ever of part of the thing granted, and of a thing *in esse*) for which *exceptis, salvo, praeter*, and the like, be apt words; and a reservation which is always of a thing not *in esse*, but newly created or reserved out of the land or tenement demised." In Sheppard's Touchstone it is said of a reservation "it must be to the grantor, and not to a stranger to the deed," but if it was an attempt to reserve an easement there are other difficulties in the way. The deed was made in 1835, and at that time a grant of an interest in land which did not contain words of inheritance only conveyed a life estate to the grantee, unless it appeared "from the terms and provisions of the deed itself, the purposes it was designed to subserve, and the circumstances under which it was executed, that the intention was to convey an absolute estate." *Merritt* v. *Disney*, 48 Md. 344; *Foos* v. *Scarf*, 55 Md. 301; *Hofsass* v. *Mann*, 74 Md. 400, and other cases that might be cited. There is nothing in this deed which would take it out of the general rule. When a covenant operated by way of reservation, and not by way of exception, words of inheritance were necessary to convey a fee simple title to an easement, if made prior to the statute which changed the common law. (1856). *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196; *Whitaker* v. *Brown*, 46 Pa. St. 197; *Engel* v. *Ayer*, 85 Me. 448.

This principle is recognized by this Court in *Halle* v. *Newbold*, 69 Md. 265, where after referring to *Thurston* v. *Minke*, 32 Md. 487; *Whitney* v. *Union R. Co.*, 11 Gray 359; and *Clark* v. *Martin*, 49 Pa. 289, it was said, "These cases very conclusively settle the law that a grantor may impose a restriction, in the nature of a servitude or easement, upon the land that he sells or· leases, for the benefit of the land he

still retains; and if that servitude is imposed upon the heirs and *assigns* of the grantee, and in favor of *the heirs and assigns* of the grantor, it may be inforced by the assignee of the grantor against the assignee (with notice) of the grantee." The implication is that unless it is so imposed, it cannot be enforced by the assignee.

But there is still another difficulty in the way of the appellants. The theory of the bill as shown by the eighth paragraph is that an "easement was created on the lands mentioned and described in said deed for the benefit of the lands retained by the said Rowland; that these complainants as assigns of the said Rowland are entitled to the benefits of said easement over the lands of the defendants as assigns, with notice, of the Chesapeake and Ohio Canal Company." It has been settled by a long line of decisions in this State that our statute, requiring deeds conveying an estate of inheritance or free-hold, or any declaration or limitation of use, or any estate above seven years, to be executed, acknowledged and recorded as therein provided, is applicable to grants of or covenants for easements in land. *Hays* v. *Richardson*, 1 G. & J. 366; *Carter* v. *Harlan*, 6 Md. 20; *Long* v. *Buchanan*, 27 Md. 516; *Polk* v. *Reynolds*, 31 Md. 112; *Rayner* v. *Nugent*, 60 Md. 519; *Shipley* v. *Fink*, 102 Md. 219. In *Hays* v. *Richardson*, the owner of the land had, under his hand and seal, authorized Richardson to open a road through it and to build, keep in repair and use a bridge over a branch in the field, over which the road would pass. The road and bridge were built, and the defendant obstructed the road. In an action on the case for obstructing the way, it was held by our predecessors that there could be no recovery because it was necessary that a grant of a right of way *de novo* must be acknowledged and recorded according to our Acts of registration, and that the attempted grant amounted only to a revocable license. That was an action at law, but the principle has been announced in equity, as well as at law. In *Partridge* v. *Church*, 39 Md. 631, lot holders held certificates for lots in a cemetery, signed by the chairman of the trustees and the register, and this Court,

through JUDGE ALVEY, said: "We think it clear that it (the certificate) conferred no title or estate in the soil; nor could it operate as a grant of an easement, because it was not under seal; nor was it acknowledged and recorded, so as to be effective to convey such an interest. *Hays* v. *Richardson*, 1 Gill & Johns. 336. The right to an easement must be founded upon a grant by deed, or upon prescription, for it is a permanent interest in another's land, with a right of enjoyment; whereas a mere license is but an authority to do a particular act, or series of acts, upon another's land, without possessing any estate therein." The same principles were announced in *Rayner* v. *Nugent, supra*, and in the recent case of *Shipley* v. *Fink, supra*, the case of *Hays* v. *Richardson*, was again referred to with approval. This Court held in *Shipley* v. *Fink*, that the evidence in that case established a parol license to enjoy an easement in land, that the license was revocable and a conveyance of the land belonging to the licensor to a purchaser, without notice, revoked the license. In this case the most that can be claimed is that by the acceptance of the deed, the Canal Company impliedly contracted that the grantors should have an easement in the basin, but the deed was not signed, sealed or acknowledged by the Canal Company and hence did not grant an easement. As the grantors conveyed all their interest in the land they could only claim the easement under the implied parol agreement of the Canal Company, or on the theory of the reservation of an easement, and in either case it was necessary to have a deed, executed and recorded.

It is true that a Court of equity will not allow a licensor to withdraw his consent without making compensation to the licensee when the latter has expended money on the licensor's land, by reason of the license, but that doctrine cannot aid the appellants, even if it could have been applied if Rowland was still the interested party. The question here is whether such rights passed from Rowland through *mesne* conveyances to the appellants, as entitle them to the relief sought. We think it clear that they did not under the authorities cited. So if we consider the ground relied on in the bill, that there was an

easement in Rowland in the basin, we find that none was granted, and as the Canal Company neither signed nor sealed the deed, but the grantors undertook to reserve the easement, it was on the part of the Canal Company a mere parol license to enjoy an easement in part of the land which was conveyed to it, and it did not pass to the *assigns* of Rowland.

Nor can the appellants get the benefit of the principle above stated that a Court of equity would give relief to Rowland against a purchaser, with notice, from the Canal Company. As establishing the basin was a part of the consideration for the deed, a Court of equity might protect the vendors and require compensation—in a proper case might require specific performance as the best, if not the only, way to secure what they were entitled to, but these appellants have no right to complain because the grantors were not paid what they were entitled to, if that be assumed.

If the provision in the deed be treated as a condition, it was a condition *subsequent*, and the property would revert to the heirs of the grantors, and not to the appellants, if the condition be broken. So however we regard it, we cannot see any ground upon which the appellants are entitled to relief under this bill. If they purchased the property bounding on the basin on the supposition that the purchase carried with it the right to use the basin, it is to be regretted, but we must construe the deed as we find it, and not as it might have been drawn, in order to pass rights in the basin to assignees of Rowland of his adjoining lands. It may be well to add that an examination of the cases which were relied on by the appellants to vest the rights in the assigns of Rowland will show that they were either brought by the original parties, such as Lynn's case, or the deeds or instruments under consideration expressly included the assigns, such as *Tulk* v. *Moxhay*, *Whitney* v. *Union R. Co.*, *Clark* v. *Martin*, *Halle* v. *Newbold*, or there were peculiar grounds for equitable jurisdiction in behalf of those not parties to the deeds or other instruments, such as *Newbold* v. *Peabody Heights Co.*, *Safe Deposit Co.* v. *Flaherty*. See latter case on pages 499-500 as to

when those not parties to a deed or contract may have the benefit of provisions in it.

It follows from what we have said that the decree must be affirmed. ·

> *Decree affirmed, the appellants to pay the* · *costs, above and below.*